ROBERT W. DRUMMOND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent LOIS B. DRUMMOND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Drummond v. Commissioner
Docket Nos. 286-68, 362-68.
United States Tax Court
T.C. Memo 1976-55; 1976 Tax Ct. Memo LEXIS 355; 35 T.C.M. (CCH) 243; T.C.M. (RIA) 760055; February 26, 1976, Filed *355 Held, amounts paid by Robert Drummond to Lois Drummond with proceeds of a stock brokerage account he opened in Lois' name and from his own funds, and amounts paid by Robert with his own funds to trade creditors of Lois, were paid under a support decree and were taxable to Lois in 1964 under sec. 71(a)(3), I.R.C. 1954, and deductible by Robert under sec. 215. David N. Bressler, for the petitioner in docket No. 286-68. Morris H. Sheer, for the petitioner in docket No. 362-68. Gerald V. May, Jr., for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the year 1964 as follows: Docket
No.
Petitioner
Deficiency
286-68
Robert W. Drummond
$ 14,689.77
362-68
Lois B. Drummond
4,715.48
These two cases were consolidated for trial, briefing, and opinion. We must decide three issues: [1]
(1) Whether payments made by Robert W. Drummond to his wife, Lois B. Drummond, from funds of a stock brokerage account, title to which was in the name of Lois B. Drummond, constituted taxable income to Lois as payments for support or maintenance under section 71(a)(3), I.R.C. 1954, [2] and deductible to Robert under section 215; *356 or whether such payments constituted a nontaxable return of capital to Lois, nondeductible by Robert. (2) Whether payments made by Robert to Lois' trade creditors were includable in her income under section 71(a)(3) as support payments and deductible by Robert or whether these payments were not within the purview of that section because not paid directly to her in compliance with a Pennsylvania State court support decree. (3) Whether a payment of $ 57.50 made directly to Lois by Robert with funds from his personal checking account was a support payment taxable to Lois under section 71(a)(3); or whether this represented a repayment of an advance made by Lois on behalf *357 of Robert in a prior year. FINDINGS OF FACT Some of the facts have been stipulated and the stipulation, together with exhibits attached thereto, is incorporated herein by this reference. Petitioner Robert W. Drummond (Robert) presently resides in Carthage, N.C. During 1964, the tax year in question, Robert resided in Philadelphia, Pa., and filed his income tax return, computed under the cash receipts and disbursements method of accounting, with the district director, Internal Revenue Service, Philadelphia, Pa. Petitioner Lois B. Drummond (Lois) resides in Wayne, Pa. She also filed her 1964 income tax return with the Philadelphia office and likewise computed income under the cash receipts and disbursements method. During Robert's entire business career, from 1929 through 1970, he was employed in Philadelphia as an investment counselor and account executive. Robert began his career with E. H. Rollins & Sons; in late 1937 or 1938 he joined the firm of Payne, Webber (now Payne, Webber, Jackson & Curtis) and remained with them until 1955. From 1955 until his retirment in 1970, Robert was employed by Francis I. duPont & Co. He was not a partner in any of these firms. Prior to her marriage *358 to Robert, Lois had been employed as an executive secretary by the H. D. Von Frankinberg Company of N.Y., N.Y. Petitioners were married April 23, 1937, and Lois has not been employed since that date. Shortly after petitioners returned from their honeymoon and after Robert had joined the firm of Payne, Webber a stock brokerage account was established at Payne, Webber. Robert opened the account with his personal funds. Title to this account was placed in the name of Lois B. Drummond and was so registered on the books of the custodian, Payne, Webber. In 1955 when Robert began employment with Francis I. duPont & Co., the stock account was transferred to that firm; title to the account remained in the name of Lois B. Drummond. DuPont served as custodian until the account's liquidation in June 1964. Robert maintained a stock account in his own name with his various employers; however, his was a cash account while the account in Lois' name was a margin account. Petitioners had three children by their marriage and resided together until 1958. On November 14, 1958, petitioners were separated and have not since lived together. However, they filed joint income tax returns through the taxable *359 year 1963. In 1960 Lois filed a Complaint in Equity against Robert in a Montgomery County, Pennsylvania, Common Pleas Court in which she requested an order requiring payments for the support of herself and her children and demanded an accounting of the stock account titled in her name at Francis I. duPont & Co.
On December 19, 1962, after certain proceedings not relevant herein, the Common Pleas Court entered an "adjudication" which contained, as a conclusion of law, a finding that Robert was the sole owner of the controverted stock account and issued the following "decree nisi:" DECREE NISI And Now, December 19, 1962, it is ORDERED, ADJUDGED AND DECREED that defendant pay to plaintiff the sum of $ 21,000.00 annually for her maintenance, payable in monthly payments of cash; that defendant continue to maintain the Jenkintown residence and assume all bills now paid by him for the residence * * *. In the event the Jenkintown residence is sold, or plaintiff decides to reside elsewhere, the annual payment of $ 21,000.00 shall be increased to the sum of $ 24,000.00. The Common Pleas Court adjudication was appealed. On June 1, 1964, the Pennsylvania Supreme Court affirmed the support decree *360 but vacated a portion of the adjudication including the determination of ownership of the stock account due to misjoinder and lack of jurisdiction as to that issue. The court's remand was without prejudice to the right of Lois to commence a separate action with regard to said stock account. Subsequently, Lois filed an amended complaint seeking an accounting with regard to all financial matters involving the use of Lois' funds and asserting claims to real estate in Jenkintown, Pa., and Stone Harbor, N.J., but this was also dismissed for want of jurisdiction. Finally, in 1966 a complaint alleging title to the stock brokerage account was filed by Lois against Robert and other named defendants. This later complaint has been delayed by preliminary objections thereto and still awaits final adjudication by the Pennsylvania courts. Between December 19, 1962, the date of the Common Pleas Court adjudication (hereafter sometimes referred to as the support order), and June 1, 1964, the date on which the support order was affirmed and the determination of ownership of the stock brokerage account was vacated, Robert did not make or cause to be made payments to Lois in the amounts or in the manner *361 specified in said support order. From January 1, 1964, to November 1964, Robert made miscellaneous payments by personal checks in the total amount of $ 4,290.70 to or for the benefit of Lois. Of these payments, $ 1,383.70 were made directly to Lois; the remainder were made to trade creditors of Lois after she forwarded said creditors' statements to Robert. The payments to trade creditors are stipulated as follows: Maid
$ 530
Medical expenses
268
Food
1,456
Utilities
263
Fuel
390
Total
$ 2,907
From the inception of the stock brokerage account through April 1964, Lois received statements from Payne, Webber and later from the Francis I. duPont & Co. with respect to said account. These statements included all buy-and-sell confirmations, regular monthly statements of account balance and annual "Nominee Information Returns," T.D. Form 1087. During virtually the entire period the account was in existence, [3] Robert made all the decisions concerning which stocks were to be purchased or sold. His orders were executed by the brokerage firm in accordance with his instructions and without receipt of any direction or consent from Lois. Moreover, all margin calls with respect to the account were met by Robert *362 with contributions of his property. However, all distributions made from the account until June 2, 1964, were made in Lois' name. Between January 1, 1964, and June 2, 1964, Lois received funds from the brokerage account in the form of four checks drawn by Francis I. duPont & Co. in the aggregate amount of $ 350. [4]
In April of 1964 Robert directed Francis I. duPont & Co. to stop sending statements to Lois with respect to this account. On or about June 4, 1964, soon after the decision of the Pennsylvania Supreme Court affirming the lower court's support order, Robert directed Francis I. duPont & Co. to liquidate said account. The liquidation proceeds consisted of three checks drawn by Francis I. duPont & Co. to the order of Lois in the amounts of $ 1,750, $ 7,005.24, and $ 9,148. Robert mailed the $ 1,750 *363 duPont check to Lois on June 4, 1964. On or about June 16, 1964, Robert caused the latter two checks to be delivered to the Fidelity-Philadelphia Co. in exchange for treasurer's checks all dated June 16, 1964, issued by the bank and made payable to Lois, in denominations of $ 1,000 and $ 750 each, insofar as possible. From June 4, 1964, through September 30, 1964, Robert mailed checks to Lois totaling $ 1,750 per month as follows: Date of
Date of
Payor of
Amount of
Mailing
Check
Check
Check
6/4/64
6/4/64
Francis I.duPont Co.
$ 1,750
7/2/64
6/16/64
Fidelity-Philadelphia
Trust Co.
1,000
7/2/64
6/16/64
Fidelity-Philadelphia
Trust Co.
750
8/3/64
6/16/64
Fidelity-Philadelphia
Trust Co.
1,000
8/3/64
6/16/64
Fidelity-Philadelphia
Trust Co.
750
9/2/64
6/16/64
Fidelity-Philadelphia
Trust Co.
1,000
9/2/64
6/16/64
Fidelity-Philadelphia
Trust Co.
750
Total
$ 7,000
From October 1, 1964, through December 1, 1964, Robert mailed checks to Lois totaling $ 1,000 per month as follows: Date of
Date of
Payor of
Amount of
Mailing
Check
Check
Check
10/1/64
6/16/64
Fidelity-Philadelphia
Trust Co.
$ 1,000
11/2/64
6/16/64
Fidelity-Philadelphia
Trust Co.
1,000
12/1/64
6/16/64
Fidelity-Phiadelphia
Trust Co.
1,000
Total
$ 3,000 Due to Robert's failure to comply with the Pennsylvania *364 support order entered in 1962, Lois filed a petition for attachment against Robert. On December 29, 1964, the Common Pleas Court conducted a hearing on the matter and found Robert in default under the support order in the amount of $ 19,800, applicable to the following periods: Period
Amount of Default
Jan. 1, 1963 to June 1, 1964
$ 17,550 [5]
June 1, 1964 to Dec. 31, 1964
2,250 [6]
Total
$ 19,800
The Common Pleas Court judge who conducted the hearing was the same judge who had issued the support order of December 19, 1962. It is clear from the transcript of that proceeding, which was stipulated as evidence in this proceeding, that the amount of $ 17,550 found to be the arrearage for the period January 1, 1963, to June 1, 1964, was somewhat of an approximation by the judge based on the evidence presented by both *365 Lois and Robert at the hearing. While the judge stated that by his support order he intended the $ 21,000 annual support payments to be in cash to Lois rather than payments of bills and other payments in kind, it is clear that he gave Robert credit for such payments in kind made in 1963 and 1964 that were for support rather than upkeep of the real estate. [7] *366 It is also clear that Robert was given credit as support payments for all of the checks drawn on Francis I. duPont Co. and Fidelity-Philadelphia Trust Co. and paid to Lois from June through December of 1964, except for the $ 1,750 check of Fidelity-Philadelphia Trust Co. representing the January 1965 support payment. The $ 750 omitted by Robert in his payments to Lois in October, November, and December of 1964 was alleged by Robert to be rent for the Stone Harbor house which was in Robert's name but was occupied by Lois during the summer of 1964. The judge did not give Robert credit for such rent. The court ordered Robert to make immediate payments of $ 2,250 (the October 1-December 31, 1964, arrearages) and $ 5,000 (a portion of the June 1, 1963-June 1, 1964, arrearages). That same day Robert made the ordered payments by checks drawn on his personal checking account and additionally delivered checks totaling $ 1,750 drawn by Fidelity-Philadelphia Trust Co. representing the January 1965 support payment. [8]
For purposes of his 1964 tax return, Robert claims deductions of $ 23,290.76 [9] as alimony payments under section 215 computed as follows: To Whom
How
Amount of
Paid
Paid
Payment
Trade creditors
of Lois
Personal check
$ 2,907.00
Lois
Personal checks
8,633.76
Lois
Francis I. duPont checks
2,100.00
Lois
Fidelity-Philadelphia
Trust Co. checks
10,000.00
23,640.76
less:
[10] *367 350.00 $ 23,290.76 Lois, on her 1964 income tax return, included $ 8,326 as income from support payments received from Robert, under section 71(a)(3). This included the $ 7,250 payments received from Robert on December 29, 1964, plus $ 1,076, representing a portion of the payments made directly to her by personal checks of Robert. [11]
The difference between the amounts determined by *368 Robert to be deductible and Lois to be includable is $ 15,064.76. This disputed amount consists of: $ 2,100.00
checks of Francis I. duPont & Co.
10,000.00
from checks of Fidelity-Philadelphia
Trust Co.
2,907.00
payments made to Lois' trade creditors
57.50
personal check of Robert
.26
$ 15,064.76
Respondent has taken the position of a stakeholder in these cases and by separate notices of deficiency, both dated October 20, 1967, denied Robert any alimony deduction and included the $ 15,064.76 disputed amount as additional gross income to Lois. [12] *369 OPINION The questions we must decide in these consolidated cases are whether certain payments made or caused to be made by Robert to or for the benefit of Lois were includable in her gross income as support under section 71(a)(3) and thus deductible by Robert pursuant to section 215. Section 71(a)(3)[13] *370 requires a wife who files a separate tax return to include therein as gross income, periodic payments received from her husband made pursuant to a judicial support decree. Section 215[14] provides that payments made by a husband to his wife which must be included in her gross income under section 71, are deductible by him. This controversy involves $ 15,064.76 of payments actually or constructively received by Lois during the year 1964 for which Robert claimed a deduction under section 215, but which Lois failed to include in income. The issues relate to the following categories of payments: (1) $ 12,100 paid with funds of a stock brokerage account titled in the name of Lois B. Drummond; (2) $ 2,907 paid to trade creditors of Lois by Robert from his personal funds; and (3) $ 57.50 paid directly to Lois by Robert from his personal funds. With regard to the $ 12,100 paid with funds originating from the stock brokerage account, both petitioners on brief focus their arguments primarily on whether *371 Lois or Robert owned the brokerage account under Pennsylvania law. We do not find it necessary to answer that question because the issue here is one of Federal tax law, i.e., whether the payments in question were "periodic payments" made by Robert to Lois under a decree requiring Robert to make the payments for Lois' support and maintenance within the meaning of section 71(a)(3) of the Internal Revenue Code. If they so qualify the source of the payments is irrelevant, except as it might relate to who made the payments. There can be no question that the decree entered by the Montgomery County, Pennsylvania, Common Pleas Court on December 19, 1962, insofar as it related to payments for support, qualifies under the statute. It was a decree entered by a court having jurisdiction therein directing Robert to make periodic payments to Lois for her support and maintenance in recognition of his general obligation to support her arising out of the family or marital relationship. See sec. 1. 71-1(b)(4), Income Tax Regs. The payments required to be made by Robert under the decree were periodic because they were to be paid at least annually, were not in satisfaction of a lump sum fixed by the *372 decree and were not, in fact, limited as to the period of time during which they should be paid. We think the answer to the question of whether the payments here in question were received by Lois "under" the decree must be answered by the action of the judge of the Common Pleas Court who entered the decree at the contempt hearing on December 29, 1964. The issue there was whether Robert was in arrears on the payments required of him under the support decree and, if so, how much, and what should be done about it. After a rather extended hearing at which both Robert and Lois presented evidence, the Judge concluded that under his support decree Robert should have paid Lois $ 42,000 in cash for the years 1963 and 1964. He also concluded that Robert had paid Lois $ 22,200 and was $ 19,800 in arrears. In computing the payments made by Robert to Lois pursuant to the decree, the judge included therein the entire $ 12,100 which Lois had received in 1964 in the form of checks from Francis I. duPont Co. and Fidelity-Philadelphia Trust Co., the payments originating from the brokerage account. He also included the miscellaneous checks drawn on Robert's personal account and sent to Lois. And, despite *373 his insistence that he meant what the support decree provided, i.e., that the payments should be made to Lois in cash, the judge also included as payments made under the decree in 1963 and 1964 payments made directly by Robert to creditors of Lois for support and maintenance items such as those totaling the $ 2,907 listed in our Findings of Fact. We find the action of the judge of the Common Pleas court described above to be dispositive of the issues before us. The payments made by Robert and deducted on his return were found to be in partial satisfaction of his obligations under the support decree by the judge who entered the decree. It may be that Robert wrongfully converted property of Lois to obtain the funds to make the payments but, if so, Lois has a remedy in the Pennsylvania courts to recover her property or proceeds therefrom, which course she is presently pursuing. Lois accepted the judge's conclusion in the contempt proceeding without appeal and Robert can no longer be called upon to pay those sums as support under the decree. In fact it would appear that Lois' position in the proceedings now pending in the Pennsylvania courts, seeking an accounting for these same funds, *374 is somewhat inconsistent with her claim that the payments from the brokerage account were simply a return of her capital. The question of who owned the brokerage account should, and evidently will, be decided by the Pennsylvania courts under Pennsylvania law. If the Pennsylvania courts conclude that the account belonged to Lois then Robert will probably be called upon to account for the assets of that account; but any amount he is required to restore will not be deductible by him as support payments for Federal tax purposes. On the other hand, if the Pennsylvania courts decide that the account belonged to Robert he will not be called on to account for the assets and was perfectly entitled to use those assets to satisfy his obligation to support Lois under the decree and he should be entitled to the deduction for the year 1964 in which those assets were so used. In other words, Robert will not be able to deduct these amounts twice under any circumstances, but if he is not allowed the deduction here, he may never get a deduction he is entitled to. We also find that the issue of whether the payments, totaling $ 2,907, made by Robert directly to Lois' trade creditors with checks drawn *375 on his personal account constituted income to Lois under section 71(a)(3) is answered by the action of the judge of the Common Pleas Court at the contempt hearing. Lois argues that the support order clearly provided that she was to receive cash and because the payments now under discussion were not in compliance with that order they are not taxable to her. For the basis of her proposition, Lois points to the language of section 71(a)(3) which requires the support payments to be made "under a decree." The Common Pleas judge agreed that the support decree specified cash payments but nevertheless allowed Robert credit for these payments in kind during the time the support decree was on appeal. We think this action was proper and consequently these payments must be considered as made "under a decree" as required by the statutes. We recognize that the court's order specifically required cash payments; thus the payments made to creditors were not in strict compliance with that order. Perhaps under different circumstances it might be successfully argued that a husband's payments which are not in strict compliance with the judicial support decree constitute nondeductible, voluntary payments. *376 However, under the facts of this case, we cannot so find; the bills were paid by Robert in recognition of his obligation to Lois imposed by the Pennsylvania court order. The fact that he did not make the payments in the manner nor at the time directed by the court does not change their characterization as support payments. And under the facts presented we believe these payments were within the intended scope of section 71(a)(3). The creditors' statements had been forwarded to Robert by Lois; her natural expectation must have been that he would pay these bills. Also, Lois acknowledged at trial that the bills represented her obligations and that had she received cash from Robert it would have been used to pay these bills. See Melvin A. Christiansen,60 T.C. 456 (1973). While these payments were not made directly to Lois, they were made for her benefit. Cf. Robert Lehman,17 T.C. 652 (1951). In addition the judge who issued the support order gave Robert credit for these payments at the 1964 contempt proceeding. Lois' argument that Robert did not make these payments with the intention of providing support is not sustained by the record. Also without merit is her contention that because *377 two of her children resided in her home during the year in question and may have received some benefit from the services which the trade creditors rendered, the payments cannot be included under section 71(a)(3) as payments for her support. Commissioner v. Lester,366 U.S. 299 (1961). Next we focus upon the payment of $ 57.50 made directly to Lois by Robert from his personal funds. Lois contests the inclusion of this amount in her income on the ground that the sum was not paid for her support as required by section 71(a)(3), but was for the benefit of one of the Drummond children. She claims to have expended funds on Robert's behalf for their daughter's wedding reception, and states that the $ 57.50 represented a repayment of that advance. Robert maintains that all of the amounts paid were made pursuant to the support order. He testified that although the payments made were less than the amount ordered by the Common Pleas Court, he anticipated a reduction of that amount by the supreme court, to which he had appealed, and in any case believed he would receive credit for the payments actually made. To resolve this conflict, we must decide a question of fact: Whether the payment was *378 intended as support or as a repayment of an advance. Both parties have the burden of proving that respondent's determination is erroneous [15] and respondent's position as stakeholder does not alter this rule. [16] The evidence reflects that the $ 57.50 payment was made to Lois; she does not deny this. Lois presented no proof that any agreement existed with Robert whereby she would advance money on his behalf, nor did she prove the alleged expense was incurred. Furthermore, Robert was given credit for this payment by the Common Pleas Court at the contempt proceeding in 1962. On the evidence presented, we hold for Robert. Lois' claim that the payment was not within the scope of section 71(a)(3) because the money received was not for her benefit but for expenses of their child is without merit. Regardless of the use made of support payments, they are includable in the recipient's income. Sec. 61; cf. Commissioner v. Lester,supra.
While we have stated that we are not required to answer the question of *379 who owned the stock brokerage account, since both Lois and Robert focused so much of their evidence on this issue and it has factual overtones, we will briefly summarize our views on this point for sake of completeness. Ownership of the stock account is a question of Pennsylvania law. Morgan v. Commissioner,309 U.S. 78 (1940). Under Pennsylvania law, to establish a gift inter vivos, two elements must be proved: (1) An intention to make an immediate gift; and (2) such actual or constructive delivery of the property to the donee as to divest the donor of all dominion and control over it. [17] *381 Thompson v. Curwensville Water Company,400 Pa. 380, 162 A. 2d 198 (1960); In re King's Estate,387 Pa. 119, 126 A. 2d 463 (1956); Brightbill v. Boeshore,385 Pa. 69, 122 A. 2d 38 (1956); In re Rynier's Estate,347 Pa. 471, 32 A. 2d 736 (1943). Ordinarily, the party alleging a gift must prove its existence by clear and convincing evidence. Tomayko v. Carson,$ 3 368 Pa. 379, 83 A.2d 907 (1951).However, where a husband purchases real or personal property with his own funds and places it in his wife's name or transfers such property to his wife without consideration, a long line of Pennsylvania *380 cases hold that there is a factual presumption that a gift was intended, and in order to rebut that presumption and establish a resulting trust in his favor, the husband must support his claim by clear, explicit, and unequivocal--though not necessarily uncontradicted, evidence. Lapayowker v. Lincoln College Preparatory School,386 Pa. 167, 125 A. 2d 451 (1956); Christy v. Christy,353 Pa. 476, 46 A.2d 169 (1946); Werle v. Werle,332 Pa. 49, 1 A. 2d 244 (1938); Mahjoubian v. Mahjoubian,321 Pa. 354, 184 A. 455 (1936); Katz v. Katz,309 Pa. 115, 163 A. 214 (1932); Raub's Estate286 Pa. 575, 134 A. 451 (1926); Buckwalter Stove Co. v. Edmonds,283 Pa. 236, 128 A. 835 (1925); Gassner v. Gassner280 Pa. 313, 124 A. 483 (1924); In re Loeffler's Estate,277 Pa. 317, 121 A. 186 (1923); Buckley v. Buckley,277 Pa. 215, 120 A. 926 (1923); Waslee v. Rossman,231 Pa. 219, 80 A. 643 (1911); Earnest's Appeal,106 Pa. 310 (1884); Bowser v. Bowser,82 Pa. 57 (1876). While the evidence presented on this issue is not without its contradictions, if called upon to decide this issue we would be inclined to the view that Robert should prevail. Without discussing the evidence at length, we think it is rather clear that Robert established the brokerage account in Lois' name so he could play the stock market for his own account on margin, and that he never intended to make a gift of the account to Lois, nor did he deliver it to her. Whether it was against the rules prescribed by Payne, Webber and duPont Co. for Robert to have a margin account in his own name, as he alleges, it is not entirely clear but we are convinced Robert thought it was better to have the margin account in Lois' name. Robert apparently never consulted Lois about transactions in this account, he met all margin calls with his own funds, and exercised complete control over the account and the assets therein, except that distributions from the account had to be made in Lois' name. It is true that this account was continued in Lois' name for a number of years, and apparently long after any alleged limitations on Robert's use of *382 his own margin account ceased, but Robert's explanation is that since he had complete control of the account and he and Lois filed joint income tax returns until 1964, there was no reason to transfer the account. We find no evidence that Robert made such an actual or constructive delivery of the account to Lois as to divest himself of all control and interest therein. See Reese v. Philadelphia Trust, Safe Deposit & Ins. Co.,218 Pa. 150, 67 A. 124 (1907); Thompson v. Curwensville Water Company,supra.
While there is evidence which supports Lois' position on this issue, we think the weight of the evidence is in Robert's favor. We also feel that some weight should be given to the judgment of the Common Pleas Court that Robert was the owner of this account. While this judgment was reversed on appeal on jurisdictional grounds, it was a judgment made by a trial judge on evidence that was much fresher in the minds of the witnesses than the testimony presented to this Court. In order to reflect the concessions made by Robert, and to allow any additional medical expense deduction to which Lois may be entitled by virtue of inclusion in her income of $ 268 in medical expenses paid by Robert, *383 Decisions will be entered under Rule 155.
Footnotes
1. In her petition, Lois B. Drummond alleged respondent erred by disallowing her the use of head of household rates. Lois conceded this issue on brief. The deduction for medical and dental expenses allowed Lois was also adjusted by respondent as a result of the determined increase in the amount of her adjusted gross income. The resolution of the issues above will permit a computation of the correct amount of said deduction. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
3. Robert served in the Navy during World War II. For an unspecified period of no longer than 2 years, he was away from home and did not have any dealings with the account; the evidence is unclear with respect to the operation of the account during this time. ↩
4. Robert stipulated to a certain amount of alleged alimony payments; that sum does not include this $ 350 see p. 12, fn. 10, infra.↩
5. This amount represents an approximation of the arrearages determined by the court, and agreed to by the parties. The court's computation allowed credit for "payments in kind" to trade creditors of Lois which included the $ 2,907 of payments made during 1964. (See fn. 7.) ↩
6. This amount represents the $ 750 which remained due for each of the months of October, November, and December 1964.↩
7. While the judge made no findings of fact and it is not certain that he gave Robert credit for all of the $ 2,907 in payments to trade creditors in 1964, it appears that he probably did. The testimony of both Lois and Robert at this trial shows that Lois sent these bills to Robert for payment and he paid them.
8. This payment was also claimed deductible in 1964, presumably pursuant to sec. 215 and sec. 1.71-1(b)(5), Income Tax Regs.↩
9. Robert stipulated to this amount. ↩
10. This amount represents an error made in the stipulation of facts. In the stipulation, the discussion of the various payments made to or for Lois includes only one payment with a check of Francis I. duPont & Co., the June 4 payment of $ 1,750. The distributions made from the stock account between Jan. 1, 1964, and June 2, 1964, were omitted. These distributions aggregated $ 350 and were paid by checks of Francis I. duPont & Co. The parties noted in the stipulation that Robert does not claim credit for $ 100 admittedly received by Lois. However, the stipulation contains no specific reference to the remaining $ 250. Exhibits L-21 and L-23 are statements of the stock account for part of 1964 sent by duPont to Lois; they verify payments of $ 350 between Jan. 1, 1964, and June 2, 1964. The entire $ 2,100 ($ 1,750 and $ 350) is at issue herein.
11. Compare the amount deducted by Robert (see page 12, supra↩) representing payments made by his personal checks. The discrepancy of $ 207.76 is not explained in the record.
12. In the notice of deficiency issued to Robert respondent disallowed the entire amount of support payments included by Robert on his return. This included the $ 7,250 paid by Robert by personal check on December 29, 1964, and the miscellaneous payments made by Robert directly to Lois by personal check during 1964. Since all parties on brief focus only on whether the $ 12,100 payments by duPont and Fidelity-Philadelphia, and the payments in kind, constituted support payments, this fact was not mentioned. We think the cash payments directly from Robert to Lois would be includable in Lois' income and deductible by Robert in any event. While the position of the respondent is that of a stakeholder, he has argued on brief in favor of Robert as to each issue.
13. SEC. 71 ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- * * *
(3) Decree for support.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. 14. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income.
15. Rule 142, Tax Court Rules of Practice and Procedure.↩
16. See Freeport Transport, Inc.,63 T.C. 107, 116-117 (1974) (concurring opinion by Dawson, J.↩), and the cases cited therein at p. 117.
17. Acceptance of the gift by the donee is also a necessary element of a completed gift but is generally presumed, Kreisl v. Kreisl,$ 3 415 Pa. 424, 204 A. 2d 40 (1964), and consequently is generally not discussed by the courts. There is no controversy herein with regard to Lois' acceptance.