## Chapple's Estate.

Argued September 28, 1938.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ernest Frey,* with him *A. A. Bluestone,* for appellant.

*Zeno Fritz,* with him *Genevieve Blatt,* for appellee.

OPINION BY MR. JUSTICE DREW, December 5, 1938:
John C. Chapple died intestate, September 16, 1937, leaving to survive him a son, Walter Chapple, the appellee, a daughter, Mrs. Ida May Leasa, and his wife, Henrietta Chapple, the appellant, who is also his administratrix.   For thirty years prior to his death Chap-

ple had been superintendent at Kennywood Park and during the last nineteen of these his son Walter had served as his assistant. At the date of the decedent's death there were registered in his name on the books of the Kennywood Park Corporation and three affiliated corporations sixty-six shares of stock valued at $6,600. The certificates for these shares were in the possession of his son at the time of the father's death.

After Chapple's death Henrietta Chapple, as administratrix, filed a petition for citation addressed to Walter Chapple to show cause why he should not surrender the stock certificates for administration as part of decedent's estate. Walter Chapple filed an answer claiming title by virtue of an alleged oral gift from the decedent in September, 1930. The trial judge, sitting without a jury, found that title to the certificates was in Walter Chapple and ordered the administratrix to assign them to him. Exceptions to this order were dismissed by the decree of the court en banc from which the administratrix appealed.

To support a finding that the decedent made a gift inter vivos the evidence must clearly show an intention to make the gift and a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property but also to invest the donee with complete control of the subject matter of the gift: *Reese v. Philadelphia Trust, etc., Co.,* 218 Pa. 150; *Henderson v. Hughes,* 320 Pa. 124. Where, as here, the alleged gift is from father to son the action of the donor is viewed as a natural one, and less evidence is required to establish the intention: *Yeager's Estate,* 273 Pa. 359, 362; *Kaufmann's Estate,* 281 Pa. 519, 531. As between parties so related, if it appears that there was a voluntary delivery without explanatory words and a retention by the transferee, it can be assumed that there was an intention to give: *Yeager's Estate,* supra; *Vogan v. Jordan,* 92 Pa. Superior Ct. 519.

Guided by these principles we are of the opinion that a careful examination of the entire record discloses no sufficient ground for reversal. The testimony as to what occurred between the parties is uncontradicted; the sole question is whether it justifies the conclusion that the gift was fully executed. The evidence shows that prior to September, 1930, the stock certificates had been kept for Chapple by his daughter, Mrs. Leasa, in her safe deposit box. On or about September 27, 1930, Chapple requested her to bring the certificates to him at the park. Upon arriving there with the certificates she found her brother and her father seated in the latter's automobile. She delivered the stock to her father who then said, "I am going to give your brother these stocks, are you satisfied?" Mrs. Leasa replied that she was. Chapple then summoned Mr. Tesler, "to act as a witness that I am giving these stocks to my son." In the presence of Mrs. Leasa and Mr. Tesler the decedent thereupon handed the certificates to his son, at the same time specifying that he was to receive the dividends during his own life. Upon leaving the car, Walter Chapple handed the certificates to his sister, requesting her to keep them for him in her safe deposit box since he had none. This she did, and the certificates remained there until after Chapple's death. It is admitted that the father had no access to the daughter's safe deposit box.

We are convinced that the evidence produced at the trial was sufficient to satisfy the requirements of a valid gift inter vivos. The intention to make a gift is clearly borne out by the uncontradicted testimony of the two witnesses to the transaction. The fact that the certificates were actually handed over to the son is likewise made apparent by their testimony. Moreover, there is nothing in the evidence that would disclose an intention on the part of the father to reserve any control over the stock itself. On the contrary, the language used was clearly indicative of a desire to part with all dominion

over the property and to vest in the donee all the legal rights of ownership. The statement of the decedent to his daughter at the time of the transaction, "I am going to give these stocks to your brother," and his statement to Tesler, "I want you to act as a witness that I am giving these stocks to my son," are plain and unequivocal. The intention to completely relinquish his interest in the shares was fully carried out, and thereafter the stock was subject to the sole dominion of the son. The fact that the certificates were kept in the daughter's vault rather than in one owned by the son is immaterial so long as the latter had complete control over their disposition: *Packer v. Clemson,* 269 Pa. 1.

The appellant stresses that part of the testimony of Mr. Tesler which indicates that when Chapple gave his son the papers he said, "Remember so long as I am living I have to collect the dividends and everything on the certificates and, I am the boss as long as I live." These words are not sufficient to indicate an intention to retain any control over the stock itself. By this statement Chapple reserved only the right to the dividends, and it is clear that such a reservation does not destroy the validity of the gift. In *Packer v. Clemson,* supra, this court said (page 4) : "The gift may be sustained as an executed gift even if the right to dividends had been retained for life." Chapple's mention of the fact that he was to remain "the boss" only meant that to the extent of receiving the income from the stock he was "the boss" as long as he lived. He fully realized that he could relinquish that right at any time. Only by a strained construction of these words could it be said that they indicated that the father intended to reserve dominion over the stock. Furthermore, we must bear in mind that the court below in its findings of fact concluded that Chapple gave the certificates to his son, retaining only the right to the dividends. Such a conclusion when supported by competent evidence is binding on this court: *Kern v. Smith,* 290 Pa. 566; *Weber v. Kline,* 293 Pa. 85.

The appellant further contends that the gift was not fully executed since the certificates were never assigned or indorsed and no transfer was made on the books of the corporations. The failure to perform these acts does not affect the validity of the gift so long as the essential requisites are present. In *Connell's Estate*, 282 Pa. 555, 560, it was said: "It is now well settled that a valid gift of non-negotiable securities may be made by delivery of them to the donee without assignment or endorsement in writing. This principle has been applied to notes, bonds, stocks, and deposit certificates. . . ." Moreover, since the ownership of stock is not dependent on the transfer of the certificates on the books of the corporation, the failure to make such a transfer does not destroy the vested character of the gift: *Reese v. Philadelphia Trust, etc., Co.*, supra; *Packer v. Clemson*, supra.

At the trial the administratrix produced witnesses who testified that on several occasions after September, 1930, the decedent stated to them that he owned stock in the Kennywood Park Corporation. It is true that where the intention to make a gift is not clearly manifested subsequent acts may aid in clarifying that intention *(Packer v. Clemson*, supra), but where, as here, the intention is unambiguous we must confine our inquiry to what occurred at the time of the transaction. In the case of *Reese v. Philadelphia Trust, etc., Co.*, supra, where testimony of a similar nature was produced at the trial, the court said (page 157) : "It is never permitted a donor to impeach his gift; therefore what was said or done by Mrs. Pomeroy, unassociated with her donee and unassented to by him, is wholly irrelevant to the issue and cannot be considered."

The decree of the court below is affirmed at the cost of appellant.