## Thompson *v.* Curwensville Water Company, Appellant.

Argued April 26, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*William U. Smith,* with him *Smith, Smith & Work,* for appellants.

*Glenn E. Thompson,* for appellee.

OPINION BY MR. JUSTICE BELL, June 29, 1960:

Plaintiff filed a complaint in equity against the Curwensville Water Company and Howard J. Thompson, his father, praying that a certificate for 10 shares of the capital stock of the Water Company be transferred and delivered to him, and also claiming large sums of money for unpaid salary or compensation for labor performed for the corporation prior to January 1, 1942. This appeal involves only the stock.

In October, 1922, defendant Thompson purchased all of the capital stock of the Curwensville Water Company consisting of 550 shares. Plaintiff alleged and proved that on Christmas Day, 1922 defendant gave and delivered to him a certificate for 10 shares of the Water Company stock—certificate No. 49, dated October 2, 1922. In the certificate and on the books of the corporation plaintiff was registered as the owner of 10 shares. Plaintiff placed his stock certificate in the corporation's safe. At that time plaintiff was secretary and manager of the corporation and had access to and knew the lock combination of the company safe. He continued as secretary and manager of the company from 1922 to 1941, during which period the corporate minutes show that at the annual shareholders' meetings plaintiff was a shareholder of the corporation.

In 1941 plaintiff's father caused the corporation to dismiss plaintiff from his position as secretary and manager of the company. Since that time there is no record in the corporation's stock books that the plaintiff is a stockholder; he never attended any stockholders' meetings; he did not know where the 10 shares of stock in question were; nor did he know where the company safe was or its combination. There is a dispute as to whether the father thereafter talked with his son. In any event it is clear that their relationship was hostile. Plaintiff never made any assignment or transfer of the 10 shares of stock in question, nor did he ever release whatever interest, if any, he held therein.

In 1956 defendant Thompson without his son's permission took the certificate for the 10 shares of stock in question from the company safe, marked the certificate canceled, and then issued to himself a new certificate of stock for 10 shares. The new certificate was dated October 6, 1956. When plaintiff learned in 1957

of this action of his father, he demanded a return of this stock. When his demand was refused plaintiff filed the present suit in equity on November 19, 1957.

Defendant Thompson testified (a) that he had intended to give this stock to his son in October, 1922, but changed his mind, and (b) that he never made any delivery thereof to his son, and (c) that the stock was kept by him in the company safe from the date of its issuance.

Plaintiff and defendants requested a jury trial. The jury answered two questions:

1. Did H. J. Thompson, defendant, make out Stock Certificate No. 49 as exhibited to the jury, and deliver the same to the possession of H. V. Thompson, the plaintiff? Answer: Yes.

2. Did H. V. Thompson [plaintiff] at any time thereafter, give up or return the said stock certificate to H. J. Thompson, the defendant? Answer: No.

The jury then returned a verdict in favor of the plaintiff.

The Chancellor made findings of fact which supported plaintiff's claim that he had been given the stock by his father and that his father wrongfully took the certificate of stock and transferred it into his own name without the knowledge or consent of the plaintiff. The Chancellor then directed the defendants to forthwith execute and deliver to plaintiff a certificate for 10 shares of the capital stock of the Water Company. Defendants appealed from the Court's decree.

This appeal is controlled by *Brightbill v. Boeshore*, 385 Pa. 69, 122 A. 2d 38. In that case the Court said (pages 74, 76, 78, 79): "The general principles of law with respect to inter vivos gifts are well settled, although their application is sometimes difficult. In Rynier Estate, 347 Pa. 471, 474, 32 A. 2d 736, Chief Justice STERN said (p. 474): 'It is a general rule that

"to constitute a valid gift inter vivos two essential elements must combine: An intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith": Reese v. Philadelphia Trust, Safe Deposit & Insurance Co., 218 Pa. 150, 156, 67 A. 124, 126; Henderson v. Hughes, 320 Pa. 124, 126, 182 A. 392, 393; Fitzpatrick v. Fitzpatrick, 346 Pa. 202, 29 A. 2d 790.' See to the same effect: Chadrow, Exr. v. Kellman, 378 Pa. 237, 243, 106 A. 2d 594; Tomayko v. Carson, 368 Pa. 379, 383, 83 A. 2d 907.

. . .

" 'Where, as here, the alleged gift is from father to son the action of the donor is viewed as a natural one, and less evidence is required to establish the intention: Yeager's Estate, 273 Pa. 359, 362; Kaufmann's Estate, 281 Pa. 519, 531. . . .'

. . .

"In Fletcher's Cyc. Corp., Vol. 12, 5686, page 970, the law is thus stated: 'A gift inter vivos of stock, when once made, cannot be revoked or recalled by the donor without the consent of the donee, nor can the subsequent acts of the donor, to which the donee is not a party and to which he does not consent, affect his title, though, of course, the donee may return the stock, thus releasing any right of ownership. . . .'

"The findings of fact made by the Chancellor, who saw and heard the witnesses, when confirmed by the Court en banc, will not be reversed on appeal if they are supported by adequate evidence: Peters v. Machikas, 378 Pa. 52, 105 A. 2d 708."

Plaintiff's evidence was undoubtedly weak, but we cannot say that it was not adequate to support the findings of the jury and the findings of fact and conclusions of law made by the Chancellor.

Plaintiff waited approximately 15 years to demand these shares of stock which were in a company safe, the whereabouts of which and the combination of which were unknown to him. Defendants contend that he is therefore barred by laches.

In *Silver v. Korr*, 392 Pa. 26, 139 A. 2d 552, the Court said (page 30): "In Grote Trust, 390 Pa. 261, 135 A. 2d 383, we dismissed a claim because of laches arising from long lapse of time, deaths and attendant circumstances. The Court said (pages 269-270): 'Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him. Cf. Hammond v. Hopkins, 143 U. S. 224; Barnes and Tucker Co. v. Bird Coal Co., 334 Pa. 324, 5 A. 2d 146; 19 Am. Jur. §§498, 511; 30 C.J.S. §§112, 115, 119; Paull v. Paull, 384 Pa. 2, 119 A. 2d 93; First National Bank of Pittston v. Lytle Coal Co., 332 Pa. 394, 3 A. 2d 350.' "

While the lapse of time in the instant case was long, and the defendant Thompson was 82 years of age at the time of the trial, we agree with the Chancellor that the defendants' position and rights were not materially prejudiced by plaintiff's delay in asserting his claim.

Decree affirmed; costs to be paid by appellants.