## McClements, Appellant, v. McClements.

258

Argued March 27, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Walter O. Howarth,* for appellant.

*Louis Vaira,* with him *Albert G. Brown,* for appellees.

OPINION BY MR. JUSTICE EAGEN, June 7, 1963:

The appellant, Gertrude K. McClements, instituted this action in equity seeking to have seventy-five shares of corporate stock held by her sons, the individual defendants, charged with a constructive trust for her benefit.[1]

Joyce-McClements Company, the family-owned corporation involved, is engaged in the food catering business in the City of Pittsburgh. In 1926, when the business began, James B. McClements, Sr., the appellant's husband, owned seventy-eight shares of the corporate stock and his brother John owned seventy-two shares. This represented the total number of shares issued and outstanding. In 1930, sixty-five shares of stock were sold by John McClements to his nephew, James B. McClements, Jr., and the remaining seven shares of stock owned by John went into the company as treasury shares.

James B. McClements, Sr., died testate on December 25, 1945. His widow, the appellant, was named executrix and the sole beneficiary of his estate. In the present action, she maintains that at the date of death her husband was still the legal or equitable owner of seventy-eight shares of stock in the corporation, which interest she inherited. The defendants, three sons of the appellant and her deceased husband, contend that seventy-five shares of the stock were given to them as a gift inter vivos in the year 1940. After hearing, the chancellor entered a decree nisi dismissing the complaint. The court en banc dismissed exceptions there-

---

[1] The defendant, Frederick S. McClements, was not served with process and did not appear in the proceeding.

to and entered a final decree. This appeal followed. Whether or not the evidence is legally sufficient to justify the lower court's conclusion that the defendants are and have been for several years the owners of the stock involved is the main issue for determination.

The following facts are undisputed. The defendant, James B. McClements, Jr., has been an officer and general manager of the corporation for more than thirty years and during that period continuously in charge of its operation. For many years before his death, James B. McClements, Sr., although having little to do with the business operation, received substantial sums from the profits thereof. These payments ranged from $300 to $600 monthly. Subsequent to his death, the sum of $400 monthly was paid to the appellant until July, 1950. Following the death of James B. McClements, Sr., the inventory of the estate listed among its assets only three shares of stock in the corporation involved. The appellant, as executrix, certified to the correctness of this statement.

To sustain the defendants' position of ownership of the stock by gift, James B. McClements, Jr., testified, inter alia (without objection) that in 1940, his father was in personal financial difficulty and in order to place seventy-five shares of the stock of the corporation then registered in his name beyond the execution process, he transferred the registration of the ownership thereof to the witness; that the father also then said that the stock was to be equally distributed among his sons, James, Jr., Fritz and John, all of whom were active in the business; that subsequently he (James, Jr.,) turned over twenty-five shares to each of his brothers. He further stated that the payments from the business to the father and mother were in the nature of fulfillment of the moral obligation children owe to their parents to help support and maintain them.

While ownership of the stock involved was transferred on the books of the corporation, there was no evidence of actual delivery of the certificates of ownership from James B. McClements, Sr., to his sons. Appellant argues that this fact is decisive and that in order to effectuate a valid gift inter vivos, such delivery was essential. We do not agree.

As stated in *Brightbill v. Boeshore*, 385 Pa. 69, 122 A. 2d 38 (1956), at 74: "The general principles of law with respect to inter vivos gifts are well settled, although their application is sometimes difficult. In Rynier Estate, 347 Pa. 471, 474, 32 A. 2d 736, Chief Justice STERN said (p. 474): 'It is a general rule that "to constitute a valid gift inter vivos two essential elements must combine: An intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith": [Citing cases].' "

Under certain circumstances, the transfer of the registration of stock ownership on the books of the corporation in itself constitutes a legal and sufficient delivery: *Roberts's Appeal*, 85 Pa. 84 (1877); *Yeakel v. McAtee*, 156 Pa. 600, 27 A. 277 (1893), and *Marshall v. Commissioner of Internal Revenue*, 57 F. 2d 633 (6th Cir. 1932). While it is true that the Pennsylvania Uniform Stock Transfer Act of May 5, 1911, P.L. 126, §21, 15 P.S. §321 (repealed 1953), provided that a person to whom a certificate of stock is issued is to be regarded as the real owner, this was not conclusive of the rights between a donor and a donee: *Connell's Estate*, 282 Pa. 555, 128 A. 503 (1925). See also, *Chapple's Estate*, 332 Pa. 168, 2 A. 2d 719 (1938).

In the last mentioned case, the stock certificates were not assigned to the donee; a transfer of ownership was not made on the records of the company; the donor continued to receive the dividends and yet, this

Court held that a valid gift inter vivos had been consummated and was established.

In the present case, the evidence was sufficient to sustain the conclusion of the lower court that the father intended to make a gift of the stock to his sons and that a delivery, actual or constructive, in a nature sufficient to divest the donor of all dominion over the property was effected. As has been pointed out in many instances, such a gift between father and children is a natural one and less evidence is required to establish the intention: See *Kaufmann's Estate*, 281 Pa. 519, 127 A. 133 (1924); *Yeager's Estate*, 273 Pa. 359, 117 A. 67 (1922); *Chapple's Estate*, supra, and *Brightbill v. Boeshore*, supra.

The evidence herein also discloses that for a period of eleven years following her husband's death, the appellant made no claim of ownership of the stock. Further, as noted before, she did not include it as an asset in the accounting of her husband's estate. To now sustain her claim would result, under the circumstances herein present, in a grave injustice. See, *Grote Trust*, 390 Pa. 261, 135 A. 2d 383 (1957), and *Silver v. Korr*, 392 Pa. 26, 139 A. 2d 552 (1958).

Finally, appellant's argument that the court en banc was without legal authority to change the findings of fact of the chancellor is without merit. A chancellor, who initially makes findings of fact may subsequently join as a member of a court en banc in making a contrary finding, if the ultimate finding is supported by adequate evidence: *Morgan's Home Equip. Corp. v. Martucci*, 390 Pa. 618, 136 A. 2d 838 (1957).

Decree affirmed. Each side to pay own costs.

Mr. Justice COHEN concurs in the result.

Dissenting Opinion by Mr. Justice Roberts:

I am unable to agree with the majority's conclusion that the record here established that the decedent-father made a valid gift inter vivos to his sons of the controlling shares of stock in the family-owned corporation. The majority relies on the testimony of the son that "his father was in personal financial difficulty and in order to place seventy-five shares of the stock of the corporation then registered in his name beyond the execution process, he transferred the registration of the ownership thereof to the witness; . . ."*

It is undisputed that the purpose of transfer was "to place seventy-five shares of the stock of the corporation . . . beyond the execution process." Donative intent was not the motivation for the transfer, and without "'An intention to make the gift then and there.'" (*Brightbill v. Boeshore*, 385 Pa. 69, 74, 122 A. 2d 38 (1956)) there can be no valid gift. There is nothing in the record which could conceivably support the gift approved by the majority. In the absence of a gift, the stock remained the property of decedent and passed under the terms of his will to his widow.

I would, therefore, reverse the decision of the court en banc.

---

* From the opinion of the majority.