597 A.2d 1208

**Robert N. WAGNER, Appellee,**

v.

**HART CHEMICAL COMPANY, Joseph Hart, Lawrence M. Hart and Paul Hart, Appellants.**

Superior Court of Pennsylvania.

Argued June 18, 1991.

Filed Oct. 4, 1991.

Reargument Denied Dec. 17, 1991.

Wayne A. Kablack, Indiana, for appellants.

Blair F. Green, Kittanning, for appellee.

Before POPOVICH, JOHNSON and FORD ELLIOTT, JJ.

POPOVICH, Judge:

Appeal is taken from the order of December 7, 1990, affirming the August 23, 1990, decree nisi entered in favor of appellee Robert N. Wagner.[1]  Appellant, Hart Chemical Company, Joseph Hart, Lawrence Hart and Paul Hart ("Hart Co."; collectively referred to as "appellant") appeal from the denial of their Motion for Post–Trial Relief filed below.[2]

1. The Chancellor filed an "opinion" accompanying the August 23, 1990, "decree nisi." For purposes of review to this Court, we shall consider the "opinion" of August 23, 1990, an "adjudication." *See Holt's Cigar Co. v. 222 Liberty Assoc.*, 404 Pa.Super. 578, 584 n. 3, 591 A.2d 743, 746 n. 3 (1991) ("opinion" considered misnomer for "adjudication"); *see also Houston–Starr v. Virginia Mansions Apartments, Inc.*, 295 Pa.Super. 480, 481, 441 A.2d 1334, 1335 (1982) (same). We also shall consider the "opinion and order" of December 7, 1990, a "final decree" for purposes of this appeal. *See Holt's Cigar*, 404 Pa.Super. at 584, 591 A.2d at 746 n. 3 ("order" considered misnomer for "decree"); *see also Miller v. Miller*, 359 Pa.Super. 183, 186 n. 2, 518 A.2d 841, 842 n. 2 (1986) (same).

2. Appellant filed for post-trial relief on September 11, 1990, in technical violation of Pa.R.C.P. 227.1 ("(c) Post-trial motions shall be filed within ten days after (2) ... filing of the decision or adjudication in the case of a trial without as jury or equity trial."); *see also supra* note 1. Nonetheless, as the motion was considered on the merits by the Chancellor below, we shall review the issues raised herein, and argued below, as if they were preserved in accordance with the Rule. *See Pomposini v. T.W. Phillips Gas & Co.*, 397 Pa.Super. 564, 568 n. 3, 580 A.2d 776, 778 n. 3 (1990).

In this appeal we are asked to review the order of the Court of Common Pleas, Indiana County, insofar as it defines the relative rights and obligations existing between appellee shareholder and both his transferor and appellant corporation, its officers and directors, as of May 31, 1988. In particular, we address for the first time in this jurisdiction the "delivery" requirement under sections 8301 and 8313 of Pennsylvania's Uniform Commercial Code—Investment Securities, 13 Pa.C.S.A. § 8101 *et seq.* A thorough understanding of the factual and procedural history has aided in our resolution of the appeal.

## I

On April 26, 1988, appellant received notice from all then-existing common shareholders approving a plan for the prospective issuance (there was no formal authorization at this time) of 15,000 shares of new common stock.[3] Thereafter, on May 12, 1988, Paul Hart, President of Hart Co., sent the following letter to all common shareholders:

> The Hart Chemical Company is currently considering bids for the sale of 15,000 shares of Hart Chemical common stock. The Company is *notifying all current stockholders* that bids must be submitted in writing to the Company *before* May 31, 1988. The bid should be sent to Hart Chemical Company, PO box 232, Creekside, PA 15732.

Plaintiff's exhibit 4 (emphasis added). Lawrence M. Hart offered a bid of $6,000 for the 15,000 shares. His bid was received by Hart Co. on May 12, 1988. H.T. June 29, 1990, at 64.

On May 16, 1988, Ronald L. Tonkin and appellee met at the Marion Center Bank to execute an agreement for the sale/purchase of Mr. Tonkin's 500 shares of Hart Co. com-

---

3. Upon incorporation February 17, 1984, 1000 shares of common stock were authorized and issued in equal proportion to Lawrence M. Hart and Ronald L. Tonkin. On May 12, 1988, four common shareholders held the following interests in Hart Co.: Ronald L. Tonkin (500/1000 shares); Lawrence M. Hart (460/1000 shares); Joseph Hart (20/1000 shares); Gladys Hart (20/1000 shares).

mon stock (*supra* note 3) at a price of $25,000.[4] Plaintiff's exhibit 5. The agreement was notarized, *id.*,[5] and, on the same day, Mr. Tonkin accepted and cashed a check drawn by Mr. Wagner in the amount of $25,000. Plaintiff's exhibit 3. Later that day, May 16, 1988, both Mr. Wagner and his accountant, Mary Ella Swinehart, travelled to the Hart Co. plant. With the sales agreement and notarization in hand (but without the share certificate which remained at the Marion Center Bank, H.T. 30–32), they approached Paul Hart, presented the documentation, and notified him of Mr. Wagner's purchase of Mr. Tonkin's shares. H.T. at 25–26, 32, 37. At this point, Paul Hart examined the documentation, but, as he testified: "I didn't choose to think anything at that point in time." *Id.* at 67. Mr. Wagner recalls that "[t]hey wouldn't have anything to do with us. He [Paul] just went back into the plant." *Id.* at 27, 37.

The stock certificate, for reasons unexplained in the record, was held by the Marion Center Bank until August 18, 1989, at which time it was specifically endorsed over to Mr. Wagner and withdrawn from the bank shortly thereafter.[6] H.T. at 30–32. A new certificate for 500 shares of

---

4. The meeting was scheduled to be held at the Marion Center Bank as it was holder, in escrow, of Mr. Tonkin's share certificate pursuant to an agreement of sale entered into between Mr. Tonkin and Lawrence M. Hart and for which Mr. Hart was in breach (breach is conceded by appellant). H.T. June 29, 1990, at 9. Accordingly, Mr. Tonkin was free from the escrow agreement to transfer his shares to Mr. Wagner.

5. The sale/purchase agreement reads:
   I, Ronald Tonkin, hereby agree to sell to Robert N. Wagner 500 shares of Common stock in Hart Chemical, Inc. for a sum of $25,000.00.
   /s/ Ronald A. Tonkin
   /s/ Robert N. Wagner
   The notarization reads:
   On this 16th day of May 1988, before me a notary public the undersigned officer, personally appeared Ronald A. Tonkin and Robert N. Wagner satisfactorily proven to be the persons whose name is [sic] subscribed to the within instrument and acknowledge that they executed the same for the purpose therein contained.

6. As detailed *infra*, on review of the record we find insubstantial support for the Chancellor's contrary finding of endorsement on May 18 [sic, 16?], 1988, only with physical possession delayed until August, 1989.

Hart Co. common stock bearing appellee's name was issued on October 5, 1989. *Id.* at 28.

Mr. Wagner testified that, as of May 16, 1988, he was without knowledge of the proposed new offering of 15,000 shares of Hart Co. common stock. H.T at 29. Thereafter, but sometime before May 25, 1988, Mary Ella Swinehart received notice from Mr. Tonkin of the proposed offering. *Id.* at 37. In response, Mr. Wagner, by certified letter dated May 25, 1988, (prepared and mailed on Saturday, May 28, 1988, by Ms. Swinehart acting as Mr. Wagner's attorney-in-fact), offered $50,000 under protest as a bid for the 15,000 shares of Hart Co. common stock.[7] H.T. at 40. The bid offer was received by Paul Hart *on* Tuesday, May 31, 1988 (the day after Memorial Day).

Paul Hart, the only testifying party-defendant, explained to the court that sometime in June, 1989, the Board of Directors accepted Lawrence M. Hart's bid of $6,000 and authorized the new issue of 15,000 shares of common stock. H.T. at 71–79. The corporate minutes, however, do not speak to this action of the Board. In fact, the only reason offered for rejecting Mr. Wagner's much larger bid of $50,000 was that "[t]hey [the Board] didn't consider him a legal stockholder at the time." *Id.* at 76. It also would seem that this explains, in part, the delayed issuance of Mr. Wagner's new share certificate (the delay being that period of time from May 16, 1988, to October 5, 1989). Ms.

7. The letter reads as follows:
  Dear Mr. Hart:
    According to your letter of May 12, 1988, you are considering bids for 15,000 shares of Hart Chemical Co. common stock. Your letter was to Ron Tonkin, common stock holder at the time. Since Mr. Tonkin sold his shares of Hart chemical Company to Mr. Robert N. Wagner, and since Mr. Wagner is not a common shareholder Mr. Robert N. Wagner hereby offers the sum of $50,000.00 as per your letter of May 12, 1988 for the entire 15,000 shares of Hart Chemical Company common stock. This letter is to notify you of that bid.
    Let it be understood Mr. Robert N. Wagner is making this bid under protest, since proper procedures were not followed under Hart Chemical Company by-laws and since Mr. Tonkin revoked his consent to sell the 15,000 common shares of Hart Chemical Company by letter of May 24, 1988.
  Plaintiff's exhibit 7.

Swinehart testified to the efforts on her part to obtain a new share certificate subsequent to May 16, 1988, and recalled the reason offered for non-issuance: "they said that it wasn't issued because they were in some disagreement over whether Ron Tonkin owned 500 shares of stock." *Id.* at 42. Apparently, the corporation's concern was over proper documentation of ownership, which "concern" was relieved when appellee's attorney presented a "copy of the letter from Ronald Tonkin to Larry Hart which said that he was in default on this [the escrow] agreement with Marion Center Bank[.]" *Id.* at 53, 77. In addition, Paul Hart testified that he was not authorized to issue a new share certificate until the old certificate was returned to the corporation, and that the corporation "could not recognize Robert Wagner as a shareholder until the certificate was transferred on the books." *Id.* at 77, 79–80. Paul Hart also stated that appellee's first formal request to have the certificate transferred on the corporate books, and for a new certificate to be issued, was sometime in 1989, *id.* at 80, and, as noted *supra* at 4, the old certificate was not presented until August 18, 1989, or soon thereafter.

## II

Appellee filed a Complaint in equity seeking both the appointment of a master or custodian of Hart Co., and a preliminary restraining order against defendants to cease and desist operations of the Hart Co.

Various statutory violations were alleged with relief sought under sections 1726(c), 1767, 1791, 1792 and 1793 of the Pennsylvania Associations Code, 15 Pa.C.S.A. § 101 *et seq.* (Purdon's App.1991). The parties agreed at hearing to limit the issues to two, and we paraphrase: (1) was appellee a shareholder before May 31, 1988 with the right to bid on the proposed offering of 15,000 shares of Hart Co. new common stock; and (2), if so, was appellee's bid of $50,000 timely made in accordance with the terms of the bid solicitation when sent on May 28, 1988, and received *on* May 31, 1988? H.T. at 81.

After briefing, the Chancellor found in favor of appellee on both issues. As to the first, and we need only reach the first issue for purposes of this appeal, the court cited as controlling the Pennsylvania Uniform Commercial Code—Investment Securities, first adopted by Pennsylvania in 1953, later amended in 1963, and presently found at 13 Pa.C.S.A. § 8101 *et seq.*[8] Specifically, the court relied on section 8301(a) (UCC § 8–301(1)), which states, in pertinent part:

> **Rights acquired by purchaser.**—Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey. . . .

Unable to find actual "physical" delivery before August, 1989, the Chancellor, nonetheless, found sufficient evidence of Mr. Tonkin's intent to transfer ownership on May 16, 1988, to support a finding of "constructive" delivery:

> The facts of this case indicate that on or about May 18, 1988, Ronald Tonkin *voluntarily* [emphasis in original] entered into a sales agreement in which he agreed to sell *his* [emphasis in original] 500 shares of corporate stock to Robert N. Wagner in consideration of $25,000, which was paid by check at the time of the purchase. The sale was completed *when Mr. Tonkin endorsed his share certificate over to Mr. Wagner,* thus formally evidencing the transfer. However, due to various difficulties, the actual "physical" transfer of the stock did not occur until Au-

---

**8.** Division 8 applies to "securities," defined in section 8102 as follows:

(1) A "security" is an instrument which:

　(i) is issued in bearer or registered form;

　(ii) is of a type commonly dealt in upon exchanges or market or commonly recognized in any area in which it is issued or dealt in as a medium for investment;

　(iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and

　(iv) evidences a share, participation or other interest in property or in an enterprise of evidences an obligation of the issuer.

13 Pa.C.S.A. § 8102.

The parties do not contest application of the Code provisions to the shares of Hart Co. common stock. We concur in that common stock of a closely-held corporation falls within the compass of Division 8.

gust of 1989, and only subsequently were they transferred on the corporate books. As was stated above, in order to effectuate a transfer of securities, delivery is the primary requirement accompanied with the intent to change ownership. This Court is of the opinion that although "actual" delivery failed to occur until over a year elapsed from the time of the agreement, "constructive" delivery occurred on or about May 18 [sic, 16?], 1988, when in fact, the written sales agreement was entered into and signed by the parties and was supported by sufficient consideration. Additionally, *the endorsement of the share certificate by Mr. Tonkin over to Mr. Wagner,* and Mr. Tonkin's acceptance of the $25,000 check sufficiently evidenced his formal intent to transfer his 500 shares of stock. For these reasons, this Court reaffirms its original determination that Mr. Wagner received good title from Mr. Tonkin and that pursuant to 13 Pa.C.S.A. § 8301(a). Mr. Wagner *was a recognized shareholder* acquiring all the rights of a corporate shareholder and indeed eligible to take advantage of the new share issue opportunity.

Chancellor's Opinion, filed December 10, 1990, at 3 (emphasis added).

### III

█ Our scope of review from a decree in equity is fairly limited and demands that we defer to the Chancellor's findings of fact, which have the weight of jury verdict, unless accompanied by an abuse of discretion, insubstantial evidentiary support of record, or a capricious disbelief of the evidence presented. *See, e.g., Presbytery of Beaver-Butler v. Middlesex,* 507 Pa. 255, 266–67, 489 A.2d 1317, 1323 (1985), *cert. denied,* 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985); *Pierce v. Penman,* 357 Pa.Super. 225, 232–33, 515 A.2d 948, 951–52 (1986); *Hengst v. Hengst,* 269 Pa.Super. 110, 112–13, 409 A.2d 88, 89 (1979). On the other hand, "conclusions of law or fact, being derived from nothing more than the chancellor's reasoning from underlying

facts and not involving a determination of credibility of witnesses, are reviewable." *Gey v. Beck,* 390 Pa.Super. 317, 323, 568 A.2d 672, 675 (1990); *Village Beer & Bev. v. Vernon D. Cox & Co.,* 327 Pa.Super. 99, 102, 475 A.2d 117, 118 (1984).

We find the above-quoted excerpt from the Opinion of December 10, 1990, illustrative of both factual and legal misapprehensions held by the court below. Factually, after scrupulous review of the hearing transcript, exhibits and the parties' briefs, we find the record supports only one conclusion—endorsement *and* transfer of possession of the share certificate did not occur until August 18, 1989, or soon thereafter. *See supra* at 1210.[9] Legally, satisfaction of the delivery requirement establishes only the legal rights and obligations existing between the transferor and the transferee, *not* between the transferee and the corporation. *See Wagner v. Wagner,* 466 Pa. 532, 540 n. 9, 353 A.2d 819, 823 n. 9 (1976) ("the name in which securities are registered is not necessarily determinative of ownership as between a transferor ... and a transferee"); *see also Green v. McKee,* 361 Pa. 95, 98, 63 A.2d 3, 4 (1949) (transfer of legal ownership may be accomplished absent registration on the corporate books). In support of this proposition, the Penn-

---

**9.** Curiously, a copy of the share certificate was not made part of the record; Mr. Wagner, however, testified as follows:

> Q. When did you actually get your stock certificate from Mr. Tonkin?
>
> A. It was a short time after the 5th of October of '89.
>
> Q. Okay. Are you saying from Hart Chemical or Mr. Tonkin?
>
> A. From Hart Chemical. I never got anything from Mr. Tonkin.
>
> . . . . .
>
> Q. Okay. We have certificate number four, 500 shares to Mr. Tonkin. On the back of that it shows *transfer over to you, Robert N. Wagner and it's dated 8/18/89.* Do you know anything about this?
>
> A. No, I know nothing about it.
>
> Q. [When visiting the Hart Co. plant,] [d]id you also give him [Paul] the stock certificate that Mr. Tonkin executed in your favor?
>
> A. I don't know. I didn't have the stock certificate. I never saw the stock certificate, period.
>
> Q. Okay. So, even August of 1989 you had still not seen that stock certificate?
>
> A. I hadn't seen that, no.

H.T. at 30–32 (emphasis added).

sylvania Uniform Commercial Code has been read to provide the corporation with a defense whereby it may choose *not to recognize* the transferee as a shareholder until "due presentment for registration ... of a security in registered form." 13 Pa.C.S.A. § 8207(a); [10] *see In re Estate of Donsavage,* 420 Pa. 587, 593, 218 A.2d 112, 117 n. 6 (1966); *cf. Wanland v. C.E. Thompson Co.,* 64 Ill.App.3d 46, 48–49, 20 Ill.Dec. 803, 804–05, 380 N.E.2d 1012, 1013–14 (1978) (absent physical possession of a security, transferee held unable to comply with "due presentment" requirements of 8–207 and 8–401 (right to registration on corporate books upon "due presentment") of the Delaware Uniform Commercial Code). Thus, both transfer of ownership (delivery with intent to transfer rights) *and* "due presentment for registration" serve as statutory conditions precedent to a transferees' acquiring legal rights against a corporation. With these refinements, we will address the propriety of the lower court's first conclusion.

■ The initial question we must ask is whether, as of May 31, 1988, "delivery" was accomplished consistent with 13 Pa.C.S.A. §§ 8301(a), *supra,* and 8313(a), *infra,* sufficient to transfer legal title between transferor (Tonkin) and transferee (Wagner) where: (1) the parties execute a notarized contract for the sale/purchase of stock; (2) the seller accepts and cashes a check offered by the purchaser in the purchase amount; but (3) the stock certificate remains unendorsed *and* possessed by a bank under an escrow agreement *not* for the benefit of the transferee. If a transfer of legal title through proper "delivery" is found wanting, then despite what might be equitable title in the transferee sufficient to create an implied promise against the transferor compelling the transfer of legal title, there will be insufficient ownership rights in the security to

**10.** Section 8207(a) provides:
   **General rule.**—Prior to due presentment for registration or transfer of a security in registered form the issuer or indenture trustee may treat the registered owner as the person exclusively entitled to vote, to receive notifications and otherwise exercise all the rights and powers of an owner.

constitute legal authority in the transferee to exercise the rights of a shareholder (to bid in a private offering of new stock made to existing common shareholders). *See generally* 8 Anderson, Uniform Commercial Code § 8–301:6 (3d ed. 1985) (prior to delivery, transferee "is not a 'purchaser' but is merely a contracting party entitled to pre-Code remedies to enforce the contract") (footnotes omitted); Note, *Defective Transfer of Shares of Stock*, 23 U.Pitt.L.Rev. 969, 970–974 & n. 18 (1962) (discussing "delivery" requirements under the Uniform Stock Transfer Act). Moreover, where a transferee is unable to establish legal rights in a security because of an absence of proof of delivery, we need not reach the second step of the analysis as to whether the transferee has rights against the corporation to have a bid considered/accepted. *See* 13 Pa.C.S.A. §§ 8207 (*supra* note 10) and 8401 (transferee's right to registration).

As set forth above, "[u]pon *delivery* of a security the purchaser acquires the rights in the security which his transferor had...." 13 Pa.C.S.A. § 8301(a). Appellant does not cite, nor have we been able to uncover through independent research, an appellate court decision [11] in this jurisdiction defining the "delivery" requirement of the Pennsylvania Uniform Commercial Code—Investment Securities.[12] Nevertheless, Division 8's "delivery" requirement,

**11.** Research did uncover a relevant trial court opinion. *See Morrison v. Liberty Discount & Savings Bank*, 61 Lack.Jur. 37, 41 (1960). In *Morrison*, the Court of Common Pleas held that delivery had taken place where endorsement in blank was accompanied by physical possession of the share certificate by the transferee. *See* 12A P.S. § 8–313.

**12.** Our appellate courts have, however, addressed the "delivery" of investment securities incident to transfer absent specific citation to, or reliance on, sections 8301 and 8313 of the Pennsylvania Uniform Commercial Code—Investment Securities.

For instance, in *Wagner v. Wagner*, 466 Pa. 532, 537–41, 353 A.2d 819, 821–23 (1976), our supreme court defined an inter vivos gift of corporate stock around the "delivery" necessary to effectuate a valid gift, *i.e.*, relinquishment by the donor of dominion and control of the subject matter of the gift. The *Wagner* court held that "delivery" of stock was complete where a donor instructed his secretary to record on the corporate books the issuance of shares to his children for an initial issuance of stock, even where the "physical" share certificates

viewed as a prerequisite to a change of title/ownership, has been fully discoursed in the courts of our sister states and in the federal courts. *See generally* Anderson, *supra* § 8–301:6 ("Delivery is essential to a transfer of rights in a security.") (footnotes omitted) (collecting cases); 15A Am. Jur.2d, Commercial Code § 104 (1976) (delivery recognized as "final or definitive act which completes the transfer or

remained in the corporate office thereafter. The court felt that the donor "had done all that was possible to put the [shares] beyond his control." *Id.* 466 Pa. at 540, 353 A.2d at 823. And in support, the court cited *McClements v. McClements,* 411 Pa. 257, 191 A.2d 814 (1963), as "recent authority re-affirming that, at least in some circumstances, a mere change in registered ownership is effective delivery of a gift of corporate stock." *Id.; see also Robert's Appeal,* 85 Pa. 84 (1877) (transfer on corporate books held sufficient to constitute "delivery" of shares despite donor's retention of actual physical possession of newly-issued certificates).

Significantly, Division 8 of the Pennsylvania Uniform Commercial Code applies to transactions involving the "gift" of investment securities. *See* 13 Pa.C.S.A. § 1201 (purchase defined as including "taking by ... gift or any other voluntary transaction creating a property interest). Perplexing, therefore, is the absence of citation to the relevant Code provisions in either the *Wagner* or *McClements* decisions. *See Ashley v. Ashley,* 482 Pa. 228, 235, 393 A.2d 637, 640 (1978) (observing that the supreme court previously has eschewed discussion of whether a "transfer complied with the provisions of ... the Uniform Commercial Code"—citing *Brightbill v. Boeshore,* 385 Pa. 69, 122 A.2d 38 (1959)).

We also note another line of cases holding *against* "delivery" to an alleged joint owner of stock due to a lack of actual possession of the security by the claimant/alleged joint owner. *See, e.g., In re Martella's Estate,* 390 Pa. 255, 135 A.2d 372 (1957) (court finding "no evidence to prove that decedent ever *actually* delivered the stock certificate to [claimant] or that [claimant] ever had *actual* possession of the stock certificate") (emphasis in original); *In re Grossman's Estate,* 386 Pa. 647, 126 A.2d 468 (1956) (same). Again, the Code was not cited.

In sum, the most that can be gleaned from the above-referenced cases is that registration on a corporation's books may constitute "delivery" absent actual physical possession of the share certificate. *Martella* and *Grossman* are not to the contrary. In *Grossman* the donor was the exclusive registered owner; in *Martella* the court failed to mention this fact. Instantly, the cases offer little assistance for several reasons: (1) conspicuously absent in each is any reference to the pertinent Code provisions; (2) appellee's stock was registered with appellant corporation *subsequent* to the relevant time period—May 31, 1988; and (3) we feel that the issue involved in this appeal is governed specifically by the provisions of Division 8. *See* 13 Pa.C.S.A. § 1103

negotiation of a security") (collecting cases); 2A Uniform Commercial Code (U.L.A.) § 8–313 (Master Ed.1977) (collecting cases).

■ Section 8313(a) offers an *exclusive* list of when delivery to a purchaser may occur:

Delivery to a purchaser occurs when:

(1) he or a person designated by him acquires possession of a security;

(2) his broker acquires possession of a security specially indorsed to or issued in the name of the purchaser;

(3) his broker sends him confirmation of the purchase and also by book entry or otherwise identifies a specific security in the possession of the broker as belonging to the purchaser;

(4) with respect to an identified security to be delivered while still in the possession of a third person when that person acknowledges that he holds for the purchaser; or

(5) appropriate entries on the books of a clearing corporation are made under section 8320 (relating to transfer or pledge within a central depository system).

The transaction between Mr. Tonkin and appellee is not one involving a broker (8313(a)(2), (3)), or clearing corporation (8313(a)(5)), nor is there evidence of record indicating that the Marion Center Bank acknowledged itself as escrow agent holding the certificate for the benefit of appellee (8313(a)(4)), which, with such an acknowledgment, might have lent support to the Chancellor's Opinion had the security been endorsed over to appellee before May 31, 1988. Thus we are left to ask whether appellee received "possession" of the security under section 8313(a)(1) and thereby acquired the rights of his transferor under section 8301(a).[13]

("Unless displaced by the particular provisions of this title, the principles of law and equity ... shall supplement its provisions.").

13. One commentator makes the following helpful analogy:

While delivery is defined by UCC § 1–201(14) [13 Pa.C.S.A. § 1201] as a voluntary transfer of possession, it is given a more specific definition by UCC § 8–313(1)(a) [13 Pa.C.S.A. § 8313(a)(1) ], which

And we emphasize that when we speak of "possession" under section 8313(a)(1) we speak of "physical" possession of the security itself. *See In re Paragon Securities Co.,* 599 F.2d 551, 555 (3d Cir.1979); *see also Kaufman v. Diversified Industries, Inc.,* 460 F.2d 1331, 1334 (2d Cir. 1972), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972); *Matthysse v. Securities Processing Serv., Inc.,* 444 F.Supp. 1009, 1017 (S.D.N.Y.1977); *see generally* Anderson, *supra,* § 8–301:6 ("In order for delivery of security to occur under UCC § 8–301(a), either the purchaser or the designee of the purchaser must obtain actual physical possession of the security.") (footnote omitted).

Appellee did not receive actual physical possession until sometime in August, 1989, at which time the stock certificate was endorsed over to him and withdrawn from the Marion Center Bank shortly thereafter. As noted previously, we find no evidence of record to support a finding that the certificate was held by the Bank for appellee's benefit (a form of statutory constructive delivery under 8313(a)(4)). Nor have we been able to find any recorded indication that the certificate was endorsed over to appellee at a date prior to August 18, 1989. *See supra* note 9. Thus the clear inference from the record is that at no point in time before August 18, 1989, did Mr. Tonkin part with legal possession of the share certificate; for it remained at the Bank, unendorsed, in the name of Mr. Tonkin until this date. We have not ignored the notarized agreement of sale/purchase, and the cancelled check for $25,000 paid to Mr. Tonkin and possessed by appellee on May 16, 1988, but simply are unable to equate this with physical possession of the share certificate. *See Kaufman, supra,* 460 F.2d at 1334 (preparation for physical delivery held insufficient to transfer ownership); *cf. Morris v. Kaiser,* 292 Ala. 650, 299 So.2d 252, 254 (1974) (bill of sale of securities held insufficient to constitute delivery of "security" under UCC 8–302). As such, we cannot agree with the Chancellor's finding of

with respect to securities provides that delivery occurs when a person acquires possession of a security.
Anderson, *supra,* § 8–313:5.

constructive delivery under section 8301(a). Without physical delivery of the share certificate until August 18, 1989, it follows that appellee could have had no legal rights as a shareholder against the corporation to bid on the proposed new offering *before* May 31, 1988.[14]

The Chancellor's factual finding of endorsement on or about May 16, 1988, is unsupported by the record. The legal conclusion of constructive "delivery" reasoned from this factual finding is erroneous.

Order reversed.

---

**14.** We do not reach the question of whether the corporation might have rejected appellee's bid pursuant to section 8207 (*supra* note 10) had delivery been proper. We note, however, one state court's comment on the scope of UCC 8-207 in this regard:

Taken on its face and standing by itself, the language [of UCC 8-207] would appear to go beyond the result reached in the cases which were decided under common law, in the sense that it would permit an issuer or its transfer agent to ignore a known adverse claimant until such time as he actually presents securities in proper form for registration of transfer.

*New England Merchants National Bank of Boston v. Old Colony Trust Co.*, 11 Mass.App. 539, 417 N.E.2d 471, 474 & n. 11 (1981).

Nor need we reach the issue of timely endorsement without delivery under section 8309 ("An endorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears....").