IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

---

### EASTERN DISTRICT—PHILADELPHIA, 1873.

---

## Bank of Commerce's Appeal.

1. The members of a building association were entitled to a loan on each share. One assigned his stock in the association and delivered the certificate to a bank for a loan, with power of attorney to transfer. He borrowed from the association the full amount to which he was entitled and transferred his stock to it, the bank still holding the certificate. The stock was not transferred to the bank on the books of the association—there was no provision in the charter for such transfer. The association expired and the assets were distributed by the officers amongst the stockholders shown by their books, including the association, without notice from the bank. *Held*, that the officers were not liable to the bank on the certificates held by it.

2. As between a corporation and corporator, the stock-book is evidence of their relation ; the certificate is secondary evidence.

3. Assignment of a certificate is only an equitable transfer and must be produced to the corporation and a transfer made.

January 8th 1873. Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from Nisi Prius : In Equity : No. 37, to January Term 1869.

This was a bill filed December 19th 1868, by the National Bank of Commerce against Henry Troemner (President), John H. Wahl (Vice President), Augustus C. Miller (Treasurer), Henry Eggeling (Secretary), Frederick Stacke and others, directors of the Citizens' Building and Saving Fund Association.

The bill set out :

1. The incorporation of the association on the 1st of December

(59)

1856, to continue for ten years; the articles of association were made part of the bill.

2. The association organized by the election of their officers, and issued 2000 certificates of stock.

3. Payments of $1 per share were made monthly.

4. The defendants were officers of the company, as above stated, and as such the whole "business and assets" of the association were confided to them.

5. John P. Persch became owner of 36 shares of the stock of the association, and in 1861, after he had paid $50 on each share, he transferred the same to the plaintiffs, and the plaintiffs subsequently applied to Eggeling, the secretary, to enter the transfer on the books of the association. He declined to do so; plaintiffs still owned those shares.

6. Whilst plaintiffs were owners of the 36 shares of stock, the defendants, without notice to them, and without their knowledge and consent, divided and distributed among themselves and other stockholders, to the exclusion of the plaintiffs, all the assets of the association.

7. The period for which the association was incorporated had expired, and the association had ceased to do business; the assets amounted to more than enough to pay the debts of the association, but although the plaintiffs were entitled to a share of the assets in proportion to the number of shares of stock owned by them, they had received no part of the balance of the assets, and had not been able "to procure or examine any account or statement in relation to their receipts and payments," &c.

The prayers were:

1 and 2. That the defendants should make a discovery of the business and assets of the association and the doings of the officers, and account for their receipts and expenditures on account of the association.

3. That the liabilities of the association be ascertained, and defendants pay plaintiffs their share of the surplus.

4. That the association be wound up under the direction of the court.

By the articles of association it was declared, that its object was the accumulation of a fund by the savings of its members, to enable every stockholder to invest his savings and purchase real estate; every stockholder, for each share that he should hold, to pay $1 initiation fee and $1 every month, until the value of the whole stock should be sufficient to divide to each share $200, and when $200 should have been paid on each share, the "association shall determine and close." Every stockholder should be entitled to have a loan for each share held by him.

Loans were to be taken by the stockholders in the manner specified in the articles, such loans to "be secured by the transfer

of the certificate of stock to the association, as collateral security, or by bond and warrant and mortgage on real estate." A stockholder obtaining a loan was to secure it by bond and mortgage, and transfer to the association "as collateral security, the same number of shares as he shall loan from said association," and on repayment, all the securities to be retransferred to him. Should he fail to repay, the securities to be sold, and the balance, if any, after deducting his indebtedness, to be paid to him. A stockholder in arrears to the association not to be entitled to any loans.

All transfers of shares shall be made by the secretary; the stock to consist of no more than 2500 shares.

The answers of defendants averred that Persch owned 80 shares of the stock of the association, on which $50 per share had been paid; that he owed the association $7200 on 36 shares of the stock, which were transferred to the association, that afterwards from July 10th 1861, to September 15th 1862, he borrowed on the rest of his shares $7803, and when the payments of instalments by stockholders ceased, Persch was indebted to the association $697.50; no notice was given to the association of the transfer of Persch's stock to plaintiffs until 18 months after the expiration of the charter: at the close of the association there were no assets to be divided, but about November 1866, the association in accordance with its articles had wound up its affairs, and all stockholders known to the defendants, or holding stock on the books of the company, with the exception of a few shares, having received for each share $200, a committee was appointed to collect the outstanding assets, and appropriate them to the payment of those shares. The plaintiffs did not apply during the continuance of the charter to have the stock transferred on the books; nor did they comply with the requirements of the charter as stockholders, and they were not entitled to be recognised as stockholders.

A replication was filed, and testimony taken by an examiner. On the filing of his report, John B. Gest, Esq., was appointed master. He found the facts substantially as set out in the bill and answer.

He further found, that there was nothing in the charter of the association, nor on the face of the certificates, providing any mode for transferring stock; but the company kept a book in which transfers were entered, and these were noted on the back of certificates when presented. In 1861 Persch became the owner of 80 shares of the stock, which were transferred to him on the books of the association, and the transfers noted by the secretary on the back of the original certificates, which were not surrendered.

He obtained loans from the association to as large an extent as his stock entitled him, and continued to pay the dues on said shares until they were paid up. On some of the shares loans had been granted to prior owners thereof, which loans he assumed to pay. These loans commenced in the year 1858, and continued

until August 1865: the loans for 30 of said shares being after the assignment to complainants.

To, secure some of these loans, Persch gave security on his real estate, and also transferred to the association 20 shares of stock of the Jefferson Fire Insurance Company, and gave judgment bonds for the whole. He also offered to give the 80 shares of its stock as security, and they were accepted. There was no evidence of any actual assignment of the 80 shares of stock to the association. * * *

On the 14th day of November 1862, Persch transferred to the Bank of Commerce for value received, 36 shares of the stock of the association, and delivered to the bank a formal assignment thereof and the certificates for the 36 shares, which have ever since been held by the bank.

The assignment was absolute and purported to be for value; in the same instrument was a power of attorney irrevocable to transfer, with blank for the attorney's name.

The association under its charter expired December 1st 1866; the defendants were then officers of the association. As such officers, defendants, after the expiration of the charter, collected the outstanding assets of the association, and have divided the proceeds among the stockholders whose names appeared on the books, and were not indebted to the association for loans to the amount of the stock held by them. The association was never during the period of its charter, notified of the assignment of the 36 shares to complainants: but in the year 1868, a demand was made by complainants' counsel, of Henry Eggeling, the secretary, to have the transfer entered on the books; this was declined.

The defendants treated the whole 80 shares in the name of John P. Persch, as still being his, and as being more than repaid to him by the amount of the loans obtained by him, which exceeds the value of the stock.

1. The master reported that the assignment to the plaintiffs, dated November 14th 1862, gave them a good title to the 36 shares of stock. It is absolute in its form, purported to be for a valuable consideration, and is unimpeached by any evidence in the cause. There is no reason why such a chattel should not pass by assignment. It is true that the bank did not cause the transfer to be noted on the books of the association, and did not obligate themselves in writing to pay the monthly dues, interest and fines, and to fulfil the requirements of the constitution of the company. No dues and fines are claimed to be due upon the stock. * * *

2. Had the building association a lien on the 36 shares for the loans made to Persch? * * *

It is to be observed in the first place, that the building association were certainly as much bound to have the certificates of stock transferred to them when they lent money to the holder, as the bank could be.

[Bank of Commerce's Appeal.]

They did not take this precaution, either by the negligence of their officers, or because they were satisfied with the other securities received, they permitted Persch to retain the certificates and use them. * * *

As the charter provides that security for loans may be *either* the transfer of the certificates of stock to the association, *or*, bond and warrant, and mortgage on real estate, did not the possession of the certificates by Persch warrant the bank in assuming that no loan had been then made on the security of these shares, or could be made afterwards, the certificates being in their own possession? * * * The charter of the association gives it no lien on the stock for loans, except by a transfer.

The master reports that no such lien exists in this case.

The master recommended a decree:

1. That the plaintiffs, since the 14th day of November 1862, have been the lawful owners of 36 shares of the stock of the Citizens' Building and Saving Fund Association.

2. That the association had no lien upon the said shares, for moneys lent to John P. Persch by the association.

3. That the defendants were trustees for the stockholders of the association, in winding up the affairs thereof, and in dividing or otherwise disposing of its assets; and that the plaintiffs were entitled to have received as the holders of 36 shares, their proportion of the assets coming into the hands of defendants.

4 and 5. That it be referred to a master to take an account, &c.; and the defendants pay to the plaintiffs the amount, if any, due to them.

Exceptions were filed to the master's report.

On hearing at Nisi Prius the bill was dismissed with costs.

The plaintiffs appealed to the court in banc and assigned for error the dismissal of their bill.

*F. Heyer* and *G. M. Dallas*, for appellants.—The certificates in the hands of the plaintiffs were not subject to the equities between the association and Persch; they were practically negotiable securities: Bank *v.* Lanier, 11 Wallace 369; Railroad *v.* Lewis, 9 Casey 33; N. York & N. H. R. R. *v.* Schuyler, 34 N. York R. 30; Bridgport Bank *v.* N. York & N. H. R. R., 30 Conn. 231.

*W. J. Aldrich* and *H. R. Warriner*, for appellees.—The plaintiffs were bound to take notice of all the provisions of said charter: Union Bank *v.* Laird, 2 Wheaton 390; Sabin *v.* Bank of Woodstock, 21 Vermont 355; Rogers *v.* Huntingdon Bank, 12 S. & R. 77; Morgan *v.* Bank, 8 Id. 73; Mechanics' Bank *v.* Earp, 4 Rawle 384; Grant *v.* Mechanics' Bank, 15 S. & R. 140.

[Bank of Commerce's Appeal.]

Until a transfer upon the books, the assignee has·a mere equitable claim, and is liable to every equity subsisting against the assignor: Bayard *v.* The Farmers' and Mechanics' Bank, 2 P. F. Smith 232; Farmers' Bank *v.* Inglehart, 6 Gill 50; Walsh *v.* Stille, 2 Pearson 17; Bury *v.* Hartman, 4 S. & R. 175; Gourdon *v.* Ins. Co. of N. A., 1 Binney 430; Wheeler *v.* Hughes, 1 Dallas 23; Wardel *v.* Edwards, 2 Johns. Cas. 260; Brindle *v.* McIlvaine, 9 S. & R. 74; Angell & Ames on Corporations, § 779; James *v.* Woodruff, 10 Page N. Y. Ch. R. 541; s. c. 2 Denio R. 474.

The opinion of the court was delivered, January 27th 1873, by
AGNEW, J.—This bill is to make the officers of an expired corporation responsible for alleged negligence in the settlement of the affairs of the corporation and the distribution of its assets, on the ground that the complainant is the holder of an outstanding certificate of stock under an assignment, but without a transfer on the books, or notice to the corporation or these defendants, that the plaintiff held the stock. In point of fact, notice was not given for nearly three years after the dissolution of the corporation and the settlement of its affairs. As between a corporator and the corporation, the records of the corporation, or its stock-book, as it is called, is the evidence of their relation. Meetings of the stockholders, elections and dividends, &c., are regulated by this record. The certificate is but secondary evidence, and is never demanded, except when the stockholder deals with the corporation in a contract relation. Such was the case of the Building Association *v.* Sendmeyer, 14 Wright 67. The assignment of the certificate is only an equitable transfer of the stock, and to be made available must be produced to the corporation and a transfer demanded. As between adverse claimants of the certificate, the possession of it with the transfer upon it is often the test of the title. But when the corporation itself is not dealing with its stockholder on the security of his stock, and is merely performing a corporate duty, its own record is all it needs to consult, for whoever would demand the privileges of a stockholder should produce the evidence of his title and ask to be permitted to participate. These defendants acted officially as the trustees of the expired corporation, to settle its affairs under the powers conferred by the law, and in doing so made their distribution, according to the record of the corporation, which exhibited the membership of its corporation. In doing this, without any notice from the plaintiff of his equitable assignment of the stock, clearly they were not guilty of any negligence, while the loss of the plaintiff was attributable to his own negligence, and negligence on their part is the only ground of his bill. The decree of the Court of Nisi Prius dismissing the bill is affirmed, with costs to be paid by the appellant.