## BATH SAVINGS INSTITUTION

*vs.*

## SAGADAHOC NATIONAL BANK, and others, and Trustee.

### Sagadahoc.     Opinion February 1, 1897.

*National Banks.   Stock.   Transfer.   Dividends.*

Liquidation dividends of a national bank belong to the holder of the shares, whether those shares be recorded upon the books of the bank or not, and must be paid to the holder of such shares on demand. The negotiability or transferable quality of the stock of a national bank depends upon the laws of the United States, and is not governed by state laws.

A national bank may, by law, subject the shares of a stockholder to a lien for his indebtedness to the bank, and the assignee of such shares cannot procure a transfer of the same upon the books of the bank until such indebtedness shall have been paid.

Where there is no provision in the law of the bank subjecting shares to the payment of a shareholder's debts to the bank, *held*; that a transferee of shares, that are transferable only on the books of the bank by the shareholder or his attorney and a surrender of the certificate, takes a perfect title to the shares and may assert the same by transferring the shares under a power for the purpose to himself, and require the bank upon surrender of the certificate to give a new one therefor, certifying that the shares stand recorded in his own name; *also*, he may do this against subsequent purchasers from, or attaching creditors of, the assignor, or his assignees in insolvency or bankruptcy.

Without the surrender of the certificate of stock, a bank cannot issue another upon a transfer made by the apparent owner, either in person or by attorney, that will deprive the real owner of his shares.

*Held;* that if the apparent owner cannot transfer shares that he has already conveyed away, he cannot pro tanto transfer them to the bank itself by receiving liquidation dividends. The holder is not required to give notice, for his certificate informs him that so long as he retains it, the shares cannot be transferred to another; and the bank has given him this assurance by its own certificate, and he may safely rely upon it.

But this rule does not apply to the payment of dividends that do not partake of the transfer of the corpus of the shares, but are only a distribution of their increase, that may well be made among stockholders of record at a given date.

On Report.

The case appears in the opinion.

*J. M. Trott,* for plaintiff.

The reports abound in cases relative to transfer of stock, but almost invariably they involve the question of equities as between two alleged transferees, third parties to the corporation, or the right of the holder of an unrecorded certificate either to be admitted to the corporation as a stockholder on the books, or to recover damages for a refusal to make a transfer of record. Diligent search fails to disclose any case where it is a question of the rights of the holder for value of an unrecorded certificate as against the corporation in liquidation, seeking to deprive him for its own benefit of the proportional share of distributive assets represented by the certificate.

Counsel cited: *Fitchburg Savings Bank* v. *Torrey,* 134 Mass. 239; *Bank* v. *Lanier,* 11 Wall. 369; *Supply Ditch Co.* v. *Elliott,* 10 Colo. 327 (3 Am. St. Rep. 586); 1 Wood, Ry. Law, §§ 95, 96; *Continental Nat. Bank* v. *Eliot Nat. Bank,* 7 Fed. Rep. 369, (37 Am. Rep. 353, in note); *Johnston* v. *Laflin,* 103 U. S. 532; Lowell, Transfer of Stock, §§ 121–129.

Notice: *Conant* v. *Seneca Bank,* 1 Ohio St. 306; *Cent. Neb. Nat. Bank* v. *Wilder,* 32 Neb. 456; 16 Am. and Eng. Enc. 792; *Knapp* v. *Bailey,* 79 Maine, 204; *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268; *Loring* v. *Brodie,* 134 Mass. 453; *Webb* v. *Graniteville Mfg. Co.,* 11 So. Car. 396 (32 Am. Rep. 479;) *National Security Bank* v. *Cushman,* 121 Mass. 490; *U. S.* v. *State Nat. Bank,* 6 Otto, 30; *Bridgewater Co.* v. *Lissberger,* 116 U. S. 8.

*C. W. Larrabee*, for defendants.

Committee, thus· constituted under the laws of congress, represented the stockholders of the bank, and the bank itself in all its lawful powers, and their doings were within the scope of their duties, by the banking act under which the bank was organized. They knew no stockholders other than such as appeared upon the record of the bank. ˙ R. S. of U. S., § 5210. The records were the chart and the only chart by which they could safely steer, and the certificate determines this.

We have no need of the by-laws of the bank; the certificate in express words stipulates the terms and conditions of the contract between the stockholder and the bank. *Union Bank of George-town* v. *Laird*, 2 Wheaton, 390, in which Story, J., says:—"No person, therefore, can acquire a legal title to any share except under a regular transfer according to the rules of the bank. See also *Fisher* v. *Essex Bank*, 5 Gray, 373.

There does not appear ever to have been a demand for transfer of stock and completion of title, and therefore there was no perfection of title. The committee of liquidation had no authority, no right to liquidate otherwise than according to the record of the bank and its list of stockholders kept in obedience to the law of congress before quoted.

The application of the dividends toward Weeks' notes had been made with his knowledge and assent. No information had been given to the liquidating committee, that the certificate of these shares of stock had been transferred, pledged or hypothecated. And the committee had been so careful as to obtain the consent of Weeks, the owner of the stock to the application of the dividends to his notes. Not a word of information was given the defendant bank of the transfer of this certificate to plaintiff, and no claim had been made by plaintiff, or information given to defendant till March 20, 1895.

Of the chancering the sum: The payments on Weeks' note prior to the notice of March 20th, can not be disturbed; that once lawfully applied, the bank has right to hold them as a pro tanto payment. When they were so applied, there had been no change

of title in the stock made by Weeks and none attempted, and no notice from any party having the right to claim a transfer.

Shaw, Chief Justice, in *Fisher* v. *Essex Bank*, supra, says: "All these objects are most effectually accomplished by making the transfer at the bank the decisive act of passing the property, the legal, transferable, attachable interest."

It is necessary to fix some act and some point of time at which the property changes and vests in the vendee; and it will tend to the security of all parties concerned, to make that turning point consist in an act, which while it may be easily proved, does at the same time give notoriety to the transfer.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

HASKELL, J. The shareholders of the defendant bank on April 11, 1894, voted voluntary liquidation, and appointed a committee with power to accomplish that result. The committee voted to pay liquidation dividend No. 1 May 1, 1894, of four dollars per share. That and various subsequent similar dividends amount to $103 a share. To recover these dividends on ten shares amounting to $1030 this action is brought.

Prior to the vote of liquidation the plaintiff bank acquired ten shares in defendant bank, recorded in the name of one Weeks, as collateral security for a loan, and still holds the same, the loan being unpaid and amounting to more than the liquidation dividends on the shares. The certificate contained the usual stipulation, "Transferable only on the books of said bank in person or by attorney on the surrender of this certificate." Weeks signed in blank the usual transfer and power of attorney printed on the certificate. The plaintiff did not present its certificate for transfer at the defendant bank, nor did the bank, or its committee, know of the transfer until seventy per cent of the dividends had been paid to Weeks in the following manner. The first dividend in cash, and the others by indorsement by his consent upon his paper held by the bank. The bank confesses its liability for the thirty-

three per cent unpaid, but denies its liability for seventy per cent paid to Weeks.

"The negotiability or transferable quality of the stock of a national bank depends upon the laws of the United States," and is not governed by state laws. *Continental Nat. Bank* v. *Eliot*, 7 Fed. Rep. 370; *Dickinson* v. *Central National Bank*, 129 Mass. 279; *Merchants Bank* v. *State Bank*, 10 Wall. 604; *Central Nat. Bank* v. *Williston*, 138 Mass. 248.

A national bank may, by law, subject the shares of a stockholder to a lien for his indebtedness to the bank, and the assignee of such shares cannot procure a transfer of the same upon the books of the bank until such indebtedness shall have been paid. *Knight* v. *The Old National Bank*, 3 Cliff. 429; *Union Bank*, v. *Laird*, 2 Wheaton, 390.

The assignee of shares with power to transfer the same takes an absolute title to the shares subject to any lien created by the articles of association, or by-laws thereunder, and on presentment of his certificates may require new ones to be issued to him as against subsequent assignees or attaching creditors. *Bank* v. *Lanier*, 11 Wall. 369; *Moores* v. *Bank*, 111 U. S. 163-166; *Dickinson* v. *Bank*, supra; *Sibley* v. *Quinsigamond Nat. Bank*, 133 Mass. 515. Upon this subject, *Bank* v. *Eliot*, supra, is very instructive and collates and compares many authorities upon the subject. See also *Johnston* v. *Laflin*, 103 U. S. 800.

The doctrine of the cases is, where there is no provision in the law of the bank, as in this case, to subject shares to the payment of any debt of the shareholder to the bank, that the transferee of shares that are made transferable only on the books of the bank by the shareholder or his attorney, and a surrender of the certificate, as here, takes a perfect title to the shares and may assert the same by transferring the shares under a power for the purpose to himself and require the bank, upon surrender of the certificate, to give a new one therefor, certifying the shares to stand recorded in his own name; and this he may do against subsequent purchasers from, or attaching creditors of, the assignor, or his assignees in insolvency or bankruptcy.

If the assignee may hold the shares against subsequent transfers by the assignor, against his attaching creditors, against his assignee in insolvency or bankruptcy, shall he not hold them against the assignor himself? By the terms of the certificate the shares are transferable only upon the books of the bank and the surrender of the certificate. Without the surrender of the certificate the bank cannot issue another upon a transfer made by the apparent owner, either in person or by attorney, that shall deprive the real owner of his shares; and if the apparent holder cannot transfer shares, that he has already conveyed away, a fortiori, he cannot pro tanto transfer them to the bank by receiving liquidation dividends. He should not hold and enjoy the corpus of the shares in that way, as against the real owner, any more than the shares themselves. These he cannot sell to a stranger; why should he sell them to the bank?

It is said the bank has no notice and pays innocently, while the holder is guilty of negligence in not giving notice of his title to the shares. Not so. The holder is not required to give notice, for his certificate informs him that so long as he retains that, the shares cannot be transferred to another; and the bank has given him this assurance by its own certificate, and he may safely rely upon it. Let the bank follow its own stipulations. Let it not countenance the transfer of shares, in violation of its own rules, or pay their corpus in liquidation, which is an equivalent, without requiring the production of the certificate of shares, and then bank shares will hold that confidence among merchants and bankers and persons who deal in stocks that congress intended they should hold, thereby giving them value and making them desirable property for those who may be borrowers of money in the market.

This doctrine should not, and does not, apply to the payment of dividends that do not partake of the transfer of the corpus of the shares, but are only a distribution of their increase, that may well be made among stockholders of record at a given date.

*Defendant defaulted.*