NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON, administrator, *vs.* OLD COLONY TRUST COMPANY & others.

Suffolk.    February 10, 1981. — March 9, 1981.

Present: GRANT, BROWN, & GREANEY, JJ.

*Uniform Commercial Code,* Investment securities.

The trustees of a Massachusetts business trust were authorized by G. L. c. 106, § 8-207(1), to pay liquidating dividends to the registered owner of shares in the trust, who had been issued replacement certificates on his assertion that his original certificates had been lost, and *such payment was a "defense" within the meaning of § 8-105 (2) (c) to* an action to recover the liquidating dividends brought on behalf of the transferee of the original certificates which had never been presented for registration of transfer.  [542-545]

CONTRACT OR TORT.   Writ in the Superior Court dated October 5, 1967.

Following the decision of the Supreme Judicial Court in 356 Mass. 612 (1970), the case was heard by *Byron,* J.

*Douglas H. Wilkins (Reginald H. Howe* with him) for the plaintiff.

*Allan van Gestel* for the defendants.

GRANT, J.   This is an action brought against the trustees of a Massachusetts business trust with transferable shares (G. L. c.  182) and their transfer agent by which the plaintiff seeks to recover certain liquidating dividends which the trust declared and paid on its common and preferred shares in 1960 and 1964 in the course of winding up its affairs.[1] The case was submitted on a statement of agreed facts[2] to a

---

[1] The plaintiff has waived an earlier claim for an ordinary dividend which was also declared and paid on the preferred shares of the trust in 1960.

[2] There was also some brief oral testimony which nobody regards as significant.

judge of the Superior Court, who found for the defendants. The plaintiff appealed from the ensuing judgment.

The agreed facts may be summarized as follows. On December 24, 1931, one Francis A. Gallop was the record owner of 105 of the common shares and ninety of the preferred shares of the trust. On that date he indorsed in blank the transfer forms which appeared on the backs of the two certificates which evidenced his ownership of those shares, and the genuineness of his signature on both certificates was guaranteed by a brokerage house. In 1955 Gallop submitted to the transfer agent an affidavit in which he asserted that he had lost his certificates and by which he applied for the issuance of new certificates. Upon Gallop's submitting a lost securities bond running in favor of the transfer agent and the trust, the trustees authorized the issuance of replacement certificates, which was done. In 1960 the trustees called all the common and preferred shares for redemption. Gallop surrendered his replacement certificates and was paid the liquidating dividends which the trustees had by then declared on both classes of stock. He was also paid a final liquidating dividend which was declared on the common stock in 1964.

One James F. Bacon died in 1966, and the plaintiff was duly appointed as administrator of his estate. The plaintiff discovered among Bacon's papers the two certificates for the common and preferred shares of the trust which had originally been issued to Gallop and which bore his indorsements in blank. Those certificates had never been presented to the transfer agent for the issuance of new certificates in Bacon's name, and neither the books and records of the transfer agent nor those of the trust had ever reflected any transfer from Gallop to Bacon of any ownership or other interest in any shares of the trust of either class.[3] The plaintiff, after

---

[3] There is nothing in the record which would warrant an inference that either the transfer agent or the trustees had any idea, prior to Bacon's death, of what had happened to Gallop's original certificates other than that they had been lost, as Gallop had represented in his application for replacement certificates.

notice to the surety on Gallop's lost securities bond, surrendered the original certificates to the transfer agent in 1967 and demanded payment of the liquidating dividends which had been declared in 1960 and 1964. The defendants refused payment, and the present action was commenced on October 5, 1967.

The parties skirmished over the pleadings for two years. In 1969 the case reached the Supreme Judicial Court on the plaintiff's exceptions to an order of the Superior Court sustaining the defendants' demurrer to the plaintiff's second substitute declaration (declaration). The parties argued at some length the question whether the case was governed by the provisions of art. 8 ("INVESTMENT SECURITIES") of the Uniform Commercial Code (G. L. c. 106, §§ 8-101 et seq.).[4] The court concluded that the shares of the trust were "securities" within the meaning of § 8-102 (1)(*a*) of the Code (G. L. c. 106, § 8-102[1][*a*], as appearing in St. 1957, c. 765, § 1), that the plaintiff was the "holder" of those securities within the meaning of § 1-201(20) of the Code (G. L. c. 106, § 1-201[20], as appearing in St. 1957, c. 765, § 1), and that the declaration stated a cause of action because, on the facts alleged, the plaintiff fell within the ambit of § 8-105(2)(*c*) of the Code (G. L. c. 106, § 8-105[2][*c*], as appearing in St. 1957, c. 765, § 1), which provides: "In any action on a security . . . (*c*) when signatures are admitted or established production of the instrument entitles a holder to recover on it unless the defendant establishes a defense or a defect going to the validity of the security." *New England Merchants Natl. Bank* v. *Old Colony Trust Co.*, 356 Mass. 612, 615-616 (1970).[5] Because payment is a matter of defense, and because none of the previously recited facts concerning payment appeared from the declaration, the court expressly declined (356 Mass. at 616)

---

[4] We have examined the record and briefs before the Supreme Judicial Court. See *Flynn* v. *Brassard*, 1 Mass. App. Ct. 678, 681 (1974).

[5] See *E.H. Hinds, Inc.* v. *Coolidge Bank & Trust Co.*, 6 Mass. App. Ct. 5, 10-11 (1978).

to pass on the question whether the defendants might have a defense under § 8-207(1) of the Code (G. L. c. 106, § 8-207[1], as appearing in St. 1957, c. 765, § 1), which provides: "Prior to due presentment for registration of transfer of a security in registered form the issuer[6] . . . may treat the registered owner as the person *exclusively entitled to* vote, to receive notifications and otherwise to *exercise all the rights and powers of an owner*" (emphasis supplied).[7] The plaintiff's exceptions were sustained, and the case went back to the Superior Court, where it languished until 1980.

In our view the only question for decision is whether the defendants, by paying the liquidating dividends to Gallop prior to the presentment to them of the certificates originally issued to him, have established a "defense" to the action within the meaning of § 8-105(2)(*c*) which is effective against the plaintiff. We conclude that they have and that they are entitled to prevail in this action.

We start our analysis by a consideration of the rules which had been enunciated in the cases which were decided prior to the adoption of art. 8 of the Code. In the absence of a specific statutory provision such as § 3(a) of the Uniform Stock Transfer Act (see G. L. c. 155, § 29, as in effect prior to St. 1957, c. 765, §§ 2 and 21[8]), it was generally held or considered that an ordinary business corporation[9] was

---

[6] An "issuer" is defined in § 8-201(1) of the Code (G. L. c. 106, § 8-201[1], as appearing in St. 1957, c. 765, § 1).

[7] Massachusetts has not adopted the changes in § 8-207 which were recommended by the American Law Institute and the National Conference of Commissioners on Uniform State Laws in 1977. See pages 144-145 of the 1981 supplement to Uniform Commercial Code, 2A U.L.A. (Master ed. 1977).

[8] "Sections twenty-four to forty-four, inclusive [the Uniform Act], shall not be construed as forbidding a corporation — (a) To recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner. . . ."

[9] We recognize the differences between corporations and Massachusetts business trusts and that the Uniform Stock Transfer Act did not apply to the latter. *Ross* v. *Wright*, 286 Mass. 269, 275 (1934). However, we treat them as the same type of entity for the purposes of the present

protected in paying liquidating dividends to a shareholder of record prior to receipt of notice that the shareholder had pledged his shares to someone else as collateral security for a loan. See, e.g., *Merchants & Mechanics Bank* v. *Boyd Co.*, 143 Ga. 755 (1915); *Bay City Bank* v. *St. Louis Motor Sales Co.*, 255 Mich. 261, 263 (1931) ("[T]he corporation had a right to treat the registered holder as owner for all purposes"); *Bank of Hollister* v. *Schlichter*, 191 N.C. 352, 356 (1926); *Bank of Commerce's Appeal*, 73 Pa. 59, 64 (1873). Contra *Bath Sav. Inst.* v. *Sagadahoc Natl. Bank*, 89 Me. 500, 505 (1897) (national bank). A different result was reached under § 3(a) of the Uniform Stock Transfer Act (note 8, *supra*), apparently for the reason that a liquidating dividend was thought not to be a "dividend" within the meaning of § 3(a). See *Bay City Bank* v. *St. Louis Motor Sales Co.*, 255 Mich. at 263-265; *Bogardus* v. *Kentucky State Bank*, 281 S.W. 2d 904, 905-906 (Ky. 1955). In *Morrison* v. *Gulf Oil Corp.*, 189 Miss. 212, 221-222 (1940), which was also decided with reference to § 3(a) of the Act, it was held that a corporation was liable to a pledgee of its shares for the value of a stock dividend which it had paid to a shareholder of record after receiving notice of the pledgee's claim.

It was in light of that background that the American Law Institute (A.L.I.) and the National Conference of Commissioners on Uniform State Laws (Commissioners) recommended the adoption of § 8-207(1) of the Code, which expressly provides that "[p]rior to due presentment for registration of transfer of a security in registered form[10] the issuer . . . may treat the registered owner as the person exclusively entitled . . . to exercise all the rights and powers of an owner." The language of subsection (1) clearly changes

---

analysis because §§ 1-201(20), 8-102(1)(*a*), 8-105(2)(*c*), 8-201(1), 8-202(4), 8-207(1) and 8-401 of the Code treat them in the same fashion.

[10] A "security in registered form" is defined in § 8-102(1)(*c*) of the Code (G. L. c. 106, § 8-102[1][*c*], as appearing in St. 1957, c. 765, § 1). That definition was not affected by St. 1963, c. 188, § 14, or by St. 1974, c. 465.

the result reached in the cases on liquidating dividends which were decided under § 3(a) of the Uniform Stock Transfer Act. Taken on its face and standing by itself, the language would appear to go beyond the result reached in the cases which were decided under the common law, in the sense that it would permit an issuer or its transfer agent to ignore a known adverse claimant until such time as he actually presents securities in form proper for registration of transfer.[11] No case has been brought to our attention, nor have we found any, in which a court has had occasion to consider § 8-207(1) at length. In the few cases in which it has been cited, the courts appear to have assumed that subsection (1) means just what it says. See *Monarch Life Ins. Co.* v. *State Tax Commn.*, 39 App. Div. 2d 31, 33 (1972), aff'd 32 N.Y. 2d 850 (1973); *Donsavage Estate*, 420 Pa. 587, 593 n.6 (1966); *Huebner Estate (No. 1)*, 51 Pa. D. & C. 2d 611, 618 (1971) (the "provision is obviously directed to a means by which corporations may protect themselves from liability, not to the determination of property rights of shareholders or alleged shareholders inter se"). See also 12 Fletcher, Cyclopedia of the Law of Private Corporations § 5500, at 349 (rev. perm. ed. 1971).

Finally, we observe the official comment made by the A.L.I. and the Commissioners when they advanced their 1977 recommendations for changes in § 8-207 (see note 7, *supra*), which reads in material part as follows: "Subsection (1) states the issuer's right to treat the registered owner of a certificated security as the person entitled to exercise all the rights of an owner. This right of the issuer is limited

---

[11] We need not go that far in order to decide the present case, in which it is clear that none of the defendants was aware of the claim now advanced by the plaintiff until three years after the payment of the last liquidating dividend to Gallop. See note 3, *supra*. We observe, however, that the official reasons given by the A.L.I. and the Commissioners for the changes in § 8-207 which they recommended in 1977 (see note 7, *supra*) include the following: "Under present subsection (1), the issuer of a certificated security may and, in the absence of conclusive evidence that the security has been transferred, presumably will rely on the registry to establish the identity of those entitled to ownership rights."

by the provisions of Part 4 of this article — once there has been due presentation for registration of transfer, the issuer has a duty to register ownership in the name of the transferee. Section 8-401. Thus its right to treat the old registered owner as exclusively entitled to the rights of ownership must cease." The only change in subsection (1) that was recommended in 1977 was the addition of the word "certificated" before the word "security." We think it obvious that the recommended change was not one of substance,[12] and we regard the quoted comment as an authoritative construction of subsection (1) in its present form.

We conclude that § 8-207(1) protected the defendants in paying the liquidating dividends to Gallop, that they have established a "defense" to the present action within the meaning of § 8-105(2)(c), and that the plaintiff has failed to sustain its "burden of establishing that [it] or some person under whom [it] claims is a person against whom the defense . . . is ineffective," as required by § 8-105(2)(d). In particular, the plaintiff has failed to establish that Bacon was a "purchaser[13] for value[14] who [took] without notice of the particular defense" within the meaning of § 8-202(4) of the Code (G. L. c. 106, § 8-202[4], as appearing in St. 1957, c. 765, § 1) because, on this record, the time when and the circumstances in which Bacon acquired possession of the certificates originally issued to Gallop are matters of conjecture.

Accordingly, the entry is

, *Judgment affirmed.*

---

[12] It is clear from the Reporter's Introductory Comment that the reason for all the changes in art. 8 of the Code which were recommended in 1977 was to "facilitate the elimination, or reduction in the use, of stock certificates." See page 114 of the 1981 supplement to 2A Uniform Laws Annot., U.C.C. (master ed. 1977).

[13] Defined in § 1-201(32) and (33) of the Code (G. L. c. 106, § 1-201[32] and [33], as appearing in St. 1957, c. 765, § 1, and St. 1958, c. 542, § 2, respectively.

[14] Defined in § 1-201(44) of the Code (G. L. c. 106, § 1-201 [44], as appearing in St. 1957, c. 765, § 1).