### In the Matter of The HAWAII CORPORATION, Debtor.

### Bankruptcy No. 76–0512.

United States District Court, D. Hawaii.

April 8, 1986.

Gregory P. Conlan, Chun, Kerr & Dodd, Honolulu, Hawaii, for Bank of Honolulu.

Don Jeffrey Gelber, Robert J. Faris, Gelber & Gelber, Honolulu, Hawaii, for John T. Goss, trustee.

## DECISION

PENCE, District Judge.

This latest hearing in the court's ten-year involvement in the Chapter X liquidation proceedings of The Hawaii Corporation ("THC"), concerns a certain Proof of Stock Interest submitted by the Bank of Honolulu. Pursuant to Chapter X Rule 10–401(f) of the Bankruptcy Act, the THC Trustee objects to the Bank's stock interest claim on the authority of *inter alia*, Hawaii Rev. Stat. section 490:8–207(1). Few courts have considered § 8–207(1) of Article 8 of the Uniform Commercial Code at length, and none of those cases dealt with the specific factual and procedural setting present here.

## BACKGROUND

The Trustee bases his objection on the grounds that the stock interest claimed by the Bank involves shares of stock which have always been and still are registered on THC's books in the name of Randolph Crossley. Crossley, a former president and director of THC, pledged the shares to the Bank as security for a loan made as part of THC's Employee Stock Purchase Plan during 1974 and 1975. Over the two year period, Crossley pledged some 20,769 shares to the Bank. The Bank never did record this transaction on THC's books.

In 1977, the Bank instituted a collection action against Crossley when he failed to meet the obligations of the stock purchase loan. In settling with Crossley on September 14, 1977, the Bank retained possession of the Crossley shares, and received additional security in exchange for its forebearance. However, the record indicates that the Trustee had no knowledge of either Crossley's default or the Bank's status as pledgee until early 1984.

In 1978, the Trustee brought suit against Crossley and other former directors, officers and auditors for alleged malfeasance, misfeasance, etc. *Goss v. Crossley*, 6 B.R. 341 (1980). In addition, the creditors of THC brought class actions against the same parties. In 1979, the Trustee, the class action plaintiffs, and defendants negotiated a global settlement of the consolidated class actions which arose out of the collapse of THC and its subsidiary, THC Financial Corp., as well as the Bankruptcy action involving Crossley, et al., whereby as a part thereof Crossley released the Trustee from "all claims, demands, causes of action, or interests." In April of 1985, this court held that the terms of the Release executed by Crossley included the stock registered in Crossley's name.

Since Crossley was the registered owner of the stock during the period of settlement, and since the Bank's status as pledgee was never reflected on THC's stock transfer books, the Trustee contends that § 8–207(1) allowed the Trustee to treat Crossley as the holder of all rights of the

stock. Based on Crossley's release of his interest in THC, the Trustee asserts that the right to receive distributions from Crossley's stock interest has been extinguished. Accordingly, the Trustee sees no obligation to honor the Bank's Proof of Stock Interest.

## DISCUSSION

H.R.S. § 490:8–207(1) provides:

Prior to due presentment for registration of transfer of security in registered form the *issuer* ... may treat the *registered owner* as the person exclusively entitled to vote, to receive notifications and otherwise to exercise all the rights and powers of an owner. (Emphasis added.)

There is no dispute that Crossley qualifies as the registered owner. In addition, the Trustee may be labeled an "issuer" within the meaning of the Code.

In part 2 of Article 8, § 8–201 defines "issuer" to include a person who:

(a) Places or authorizes the placing of his name on a security ... to evidence that it represents a share, participation or other interest in his property or in an enterprise or to evidence his duty to perform an obligation evidenced by the security; or

(b) Directly or indirectly creates fractional interests in his rights or property which fractional interests are evidenced by securities; or

(c) Becomes responsible for or in place of any other person described as an issuer in this section.

As correctly pointed out by the Trustee, THC falls squarely within subsections (a) and (b), and the Trustee, by operation of the Bankruptcy Act, falls within subsection (c). Furthermore, a person's status as issuer continues beyond the first act of issuing securities.

Since the Trustee is an issuer, the basic question before the court is whether the Trustee, by entering into a settlement with Crossley prior to any presentment or registration by the Bank of its status as pledgee of Crossley's stock, has established a "defense" to the action within the meaning of H.R.S. § 490:8–105(2)(c). That section provides that in an action on a security, "when signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant established a defense or a defect going to the validity of the security." *See New England Merchants v. Old Colony Trust,* 385 Mass. 24, 429 N.E.2d 1143, 1145 (1982).

The two courts that considered § 8–207(1) at any length found the language of the provision more than clear: "The 1977 official comment to this subsection ... states that the issuer has the right to recognize the registered owner as the person entitled to exercise all the rights of an owner until there has been due presentation for registration of transfer under part 4 of Article 8." *Id.,* 429 N.E.2d at 1145; *see also, Danaher v. C.N. Flagg and Co., Inc.,* 181 Conn. 101, 434 A.2d 944, 948, n. 3 (1980).[1] This court finds it unnecessary to inquire into the legislative history or intent of the Article to conclude that presentment for registration is basically a precondition to recognition of any stock transfer by the issuer.

In this case, the Bank had possession of the Crossley shares, yet failed to take the steps necessary to complete the transfer. In one volume on Secured Transactions and Article 9, the authors note that "the incompleteness of transfer by possession is caused by the fact that the corporation is *not* required to take notice of the transfer ... until the certificate, duly endorsed, has been presented to the corporation, ... and a corresponding change has been made on the books." (Emphasis added.) Secured Transactions Under the Uniform Commercial Code § 14.02[4], at 1508 (Matthew Bender 1985).

---

1. Although Hawaii has not adopted the changes recommended in 1977 by the American Law Institute and the National Conference of Commissioners on Uniform State Laws, the recommended change is not one of substance. *See New England Merchants v. Old Colony Trust,* 11 Mass.App. 539, 417 N.E.2d 471, 474–475 (1981).

■ Although the Bank argues that requiring registration under these circumstances would significantly reduce the negotiability of investment securities, that argument ignores the fact that the issuer needs protection too. Possession may be sufficient to perfect and protect the Bank's security interest as against third parties in general, but something more must be required vis-a-vis the issuer. Thus, even though the Bank had possession, their failure to register meant that, as it might affect THC, effective power over the shares had not passed to it as pledgee. As a result, for purposes of settlement, the Trustee was within his rights in continuing to recognize Crossley as the registered owner. Therefore the Trustee has established a defense to the present action, within the meaning of § 8–105(2)(c).[2]

Since a defense has been established, the Bank must show the defense is not effective under § 8–202. *New England Merchants*, 429 N.E.2d at 1146. That section renders an issuer's defense ineffective only against "a purchaser for value who has taken without notice of the particular defense." H.R.S. § 490:8–202(4).

Admitting that the Bank meets the value prong of § 8–202(4), the Trustee sets forth three facts that show the Bank had notice of the issuer's defense under § 8–207(1). First, when the Bank loaned Crossley the money and received possession of the shares in return, the Bank should have known that the UCC provides that the issuer of the stock could treat Crossley as the registered owner until the Bank made a due presentment for registration of transfer. Second, the Trustee points out that the Bank's standard form security agreement shows that it *actually* knew the law and the importance of registering its interest with the issuer. Finally, the stock cer-

tificates on their face state that they are transferable on the books of the corporation—the Bank can be charged with notice of these terms by virtue of § 8–202(1).

■ In response, the Bank argues that they can not be held to a standard of "clairvoyance" (i.e. how could we know that the Trustee would assert a § 8–207(1) defense?). Nonetheless, the court is satisfied that in light of the above the Bank possessed sufficient knowledge to have recognized the pitfalls of failing to register its interest on the books of THC. As a result, the defense is effective against the Bank.

Finally, The Bank suggests that the issuer must act in particular manner for § 8–207 to apply. In the instant case, the Bank claims that the 1979 settlement agreement with Crossley falls outside the "classic function" of an issuer. In *New England Merchants*, the Massachusetts Supreme Court examined the application of § 8–207(1) to the payment of liquidating dividends. While § 8–207(1) is generally discussed in terms of disbursing dividends or permitting a person to vote his shares (*see, e.g.,* T. Quinn, Uniform Commercial Code Commentary and Law Digest, Commentary to § 8–207, at 8–32 (1978)), the court in *New England Merchants* looked to the section's general grant of rights and saw "no reason why the right of a record owner to receive liquidating dividends should be excluded...." *New England Merchants*, 429 N.E.2d at 1146. Similarly in this case, § 8–207(1) should be read to include the actions taken by the Trustee in agreeing to settlement with Crossley.

## CONCLUSION

At the time of THC's collapse, as well as during the early stages of reorganization, THC stock was widely regarded as worthless. This may account for the Bank's

---

**2.** An additional defense within the meaning of § 8–105(2)(c) involves Article IX of THC's by-laws. H.R.S. § 490:8–202(1) provides that, "[e]ven against a purchaser for value and without notice, the terms of a security include those stated on the security and those made part of the security by reference to another instrument, indenture or document ... to the extent that the

terms so referred to do not conflict with the state terms." Since Article IX allows THC to treat registered owners of its stock as the owners for all purposes, the Trustee correctly points out that the by-law gives him the same defense as § 8–207(1). *See New England Merchants*, 429 N.E.2d at 1145–1146.

failure to adequately protect its rights by making known its status as pledgee. It did nothing to enhance its claim to the stock. While the Bank did aquire a valid security interest, that security interest does not afford protection when the issuer contracts to extinguish the interest of the registered owner as the Trustee did here. Under the circumstances, possession of the Crossley shares by the Bank is immaterial.

The Trustee's OBJECTION is SUSTAINED, and the estate is not required to honor the Bank's stock interest claim.

The Trustee will prepare the order.